97 F.3d 1246
 96 Cal. Daily Op. Serv. 7448, 96 Daily Journal
D.A.R. 12,269
Jose Jesus CEJA, Petitioner-Appellant,
v.
Terry STEWART, Director of Arizona Department of
Corrections; Donald Wawrzaszek, Superintendent of
Arizona State Prison, Respondents-Appellees.
 No. 94-99005.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 15, 1995.
Submission Deferred Aug. 3, 1995.
Resubmitted May 22, 1996.
Decided Oct. 8, 1996.
 
 Charles Van Cott and Michael W. Patten, Brown & Bain, Phoenix, AZ, for petitioner-appellant.
 Galen H. Wilkes, Assistant Arizona Attorney General, Phoenix, AZ, for respondents-appellees.
 Appeal from the United States District Court for the District of Arizona, Robert C. Broomfield, District Judge, Presiding. D.C. No. CV-84-02322-PHX-RCB.
 Before: FLETCHER, FARRIS and BEEZER, Circuit Judges.
 Opinion by Judge FARRIS; Partial Concurrence and Partial Dissent by Judge FLETCHER.
 FARRIS, Circuit Judge:
 
 
 1
 Jose Jesus Ceja is on death row in Arizona. He appeals the district court's denial of his habeas corpus petition. We have jurisdiction. 28 U.S.C. §§ 1291 and 2253. We affirm.
 
 BACKGROUND
 
 2
 In 1974, Ceja was tried, convicted and sentenced to death for the drug related murders of Linda and Randy Leon. The Arizona Supreme Court reversed his conviction and sentence, primarily because of hearsay problems with ballistics evidence. State v. Ceja, 113 Ariz. 39, 546 P.2d 6 (1976). In 1976, Ceja was retried, convicted and again sentenced to death upon the finding of two statutory aggravating factors. The Arizona Supreme Court, after conducting an independent review of the record, found insufficient evidence for one of the aggravating factors. It nonetheless affirmed the death penalty on the basis of the second factor, that the crime was "committed in an especially cruel, heinous and depraved manner." State v. Ceja, 115 Ariz. 413, 565 P.2d 1274, 1278 (1977).
 
 
 3
 After the Supreme Court decided Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the Arizona Supreme Court ordered the resentencing of all death row inmates. Following a third aggravation and mitigation hearing, conducted in 1979, Ceja was again sentenced to death. The Arizona Supreme Court affirmed. State v. Ceja, 126 Ariz. 35, 612 P.2d 491 (1980).
 
 
 4
 After the Arizona courts denied him relief in a Rule 32 proceeding--the mechanism for state collateral attacks--Ceja filed this habeas petition. It is his first in federal court. The district court proceedings were stayed for some time while Ceja returned to state court for a second Rule 32 proceeding. On May 5, 1994, the district court granted summary judgment in favor of Arizona. Ceja's appeal was timely.
 
 DISCUSSION
 
 5
 We review de novo the district court's summary judgment. Carriger v. Lewis, 971 F.2d 329, 332 (9th Cir.1992) (en banc), cert. denied, 507 U.S. 992, 113 S.Ct. 1600, 123 L.Ed.2d 163 (1993). Ceja raises forty-one claims in his petition. For clarity, we reference each claim with the number assigned to it in the district court, although we do not discuss the claims in numerical order. The district court rejected on the merits claims 9, 12, 15-30, 32, and 33. It rejected on the basis of procedural default claims 1-8, 10, 11, 13, 14, 31, and 34-41.
 
 
 6
 I. Claims Rejected on the Merits by the District Court
 
 
 7
 A. Constitutionality of Arizona's "Especially Heinous, Cruel or Depraved" Aggravating Factor (Claim 16)
 
 
 8
 Ceja's death sentence was premised on statutory aggravating circumstance (F)(6): "The defendant committed the offense in an especially heinous, cruel or depraved manner." A.R.S. § 13-703(F)(6) (formerly A.R.S. § 13-454(E)(6)). There is no dispute that this aggravating circumstance is facially vague. Arizona contends, however, that the Arizona courts applied a constitutionally sufficient narrowing construction. Ceja counters that the Arizona Supreme Court did not provide such a construction until it decided State v. Gretzler, 135 Ariz. 42, 659 P.2d 1, cert. denied, 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), three years after it affirmed his death sentence in State v. Ceja, 126 Ariz. 35, 612 P.2d 491 (1980). While Ceja's appeal was pending, the Arizona Supreme Court issued a stay of execution in State v. Mata, No. CR-774104-AP/PC (Ariz. July 6, 1995), to determine whether state or federal law required resentencing of those defendants who were death-qualified by a pre-Gretzler (F)(6) finding. In the interests of comity, we granted a stay of appeal. On May 9, 1996, the Arizona Supreme Court lifted Mata's stay of execution, holding that "Gretzler did not present a new, narrower interpretation of the (F)(6) factor, but simply a digest" of valid narrowing constructions set forth in earlier cases. On May 22, 1996, we lifted the stay of appeal.
 
 
 9
 In affirming Ceja's second and third death sentences, the Arizona Supreme Court explained that a heinous and depraved finding could be predicated on " 'additional violence[ ] over and above that which was necessary to carry out the defendant's criminal intent.' " Ceja, 612 P.2d at 495-96 (citing Ceja, 565 P.2d at 1278). The Arizona courts found that Ceja shot Linda six times, hitting her four times in the head and twice in the chest, and that he shot Randy four times, hitting him once in the chest, once in the back, once in the shoulder, and once in the arm. The Arizona courts also found that Ceja kicked Randy in the head as Randy lay dead or dying on the floor. The Arizona Supreme Court concluded that Ceja's " 'conduct in continuing his barrage of violence, inflicting wounds and abusing his victims, beyond the point necessary to fulfill his plan to steal, beyond even the point necessary to kill' " warranted (F)(6) aggravation. Id. (citing Ceja, 565 P.2d at 1278).
 
 
 10
 A narrowing construction of a facially vague aggravating circumstance is constitutionally sufficient if it helps the sentencer make a principled distinction between those who deserve the death penalty and those who do not. Arave v. Creech, 507 U.S. 463, 474, 113 S.Ct. 1534, 1542, 123 L.Ed.2d 188 (1993). Citing its 1980 Ceja opinion, the Arizona Supreme Court held in Gretzler that "the infliction of gratuitous violence on the victim" was one of five narrowing constructions that could support (F)(6) aggravation. 659 P.2d at 11 (citing State v. Ceja, 126 Ariz. 35, 612 P.2d 491 (1980)). The Supreme Court has twice approved this narrowing construction, first in Lewis v. Jeffers, 497 U.S. 764, 770-71, 774-78, 783-84, 110 S.Ct. 3092, 3096-97, 3103-04, 111 L.Ed.2d 606 (1990), and again in Richmond v. Lewis, 506 U.S. 40, 51, 113 S.Ct. 528, 536, 121 L.Ed.2d 411 (1992) ("a murderer who intentionally drives a car over his victim twice arguably commits 'gratuitous violence' within the meaning of Gretzler, whether or not he knows that the victim is dead after the first pass").
 
 
 11
 There is no distinction between the "additional violence" narrowing construction applied by the Arizona Supreme Court in the 1977 and 1980 Ceja opinions and the "gratuitous violence" narrowing construction approved by the Supreme Court in Jeffers and Richmond. The Arizona Supreme Court had provided an adequate narrowing construction for aggravating circumstances involving "additional violence" in 1977, prior to Ceja's resentencing in 1979.
 
 
 12
 B. Sufficiency of Admissible Evidence Supporting Aggravation Finding (Claims 12 and 13)[1]
 
 
 13
 Ceja challenges the sufficiency of admissible evidence supporting the (F)(6) finding. He contends that admissible evidence does not support the finding that he inflicted numerous gunshot wounds to both victims beyond the number necessary to kill and repeatedly kicked Randy Leon in the head. We must affirm if any rational factfinder could find beyond a reasonable doubt that Ceja inflicted additional violence on his victims. See Lewis v. Jeffers, 497 U.S. 764, 781-84, 110 S.Ct. 3092, 3102-04, 111 L.Ed.2d 606 (1990).
 
 
 14
 Testimony at trial concerning the multiple gun shot wounds was uncontradicted. The state's pathologist testified (1) that each of the six shots to Linda's head and chest could have killed her and (2) either the shot to Randy's back or the shot to his chest could have killed him. At the sentencing hearing, Detective Ysasi testified that he "did not know why [Ceja] kicked [Randy] in the head." In a post-sentencing affidavit, the medical examiner stated that he could not determine "with any degree of medical certainty that [the] abrasions [on Randy's face] were caused by a kick." This statement, and the medical examiner's observation that the abrasions were "consistent with a fall to the floor" do not contradict Detective Ysasi's testimony.
 
 
 15
 Based on either the evidence regarding the multiple gunshot wounds or the testimony of Detective Ysasi, a rational factfinder could conclude, as the Arizona courts did, that Ceja inflicted additional violence on his victims.
 
 
 16
 C. Burden of Proof for Aggravating Factors (Claim 15)
 
 
 17
 Ceja contends that the Arizona courts erred in failing to find (F)(6) beyond a reasonable doubt, the standard of proof the Eighth Amendment mandates for aggravating circumstances. Arizona counters that we may presume that the Arizona courts found (F)(6) beyond a reasonable doubt even though they never used the reasonable doubt language. We agree. One month after it affirmed Ceja's death sentence, the Arizona Supreme Court construed its death penalty statute to require proof beyond a reasonable doubt. State v. Jordan, 126 Ariz. 283, 614 P.2d 825, 828, cert. denied, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980). It stated that it had "always assumed ... that the state must prove the existence of aggravating circumstances beyond a reasonable doubt," and noted that its past practice was to "reduce a death penalty to life imprisonment where the evidence of aggravating factors is inconclusive." Id. (citing cases). The evidence of the multiple gunshot wounds was uncontradicted, and the Arizona Supreme Court affirmed Ceja's sentence after making "an independent examination of the record to determine whether the death penalty was properly imposed." Ceja, 612 P.2d at 495. The Arizona courts found (F)(6) beyond a reasonable doubt. Cf. Clark v. Ricketts, 958 F.2d 851, 860 (9th Cir.) (Arizona Supreme Court presumed to have applied reasonable doubt standard shortly after Jordan was decided), cert. denied, 506 U.S. 838, 113 S.Ct. 117, 121 L.Ed.2d 73 (1992). The record contains sufficient evidence to support a finding of (F)(6) beyond a reasonable doubt.
 
 
 18
 D. Adequacy of Arizona Courts' Consideration of Mitigating Evidence (Claims 18-24)
 
 
 19
 Ceja contends that the Arizona courts (1) discounted mitigating evidence based on assumptions unsupported by the record, (2) failed to give sufficient weight to mitigating evidence, and (3) failed to weigh the combined impact of all mitigating circumstances.
 
 1. Evidence Supporting Factual Findings
 
 20
 Ceja attacks a number of factual findings made by the sentencing court as "unsupported" by the record. Each of these findings, however, is supported by direct or circumstantial evidence introduced at trial or the sentencing hearing. The sentencing court's findings that Ceja had on at least one prior occasion stolen drugs and had used family and friends to dispose of the drugs he stole from Randy and Linda are supported by Ceja's former wife's testimony at the aggravation and mitigation hearing. The sentencing court's finding that the killings "were not the actions of a panic-stricken, inexperienced immature youth but rather those of a mature, sophisticated criminal mind" are supported by evidence of planning and concealment. The sentencing court's finding that there was deliberation between the killings of Linda and Randy can be inferred from circumstantial evidence. Ceja told Detective Ysasi that after he had shot Linda and dragged her into the bedroom, he saw Randy pull up to the house in his car. Because his own gun was empty, Ceja went to the den, where he knew Randy kept a gun, took it and confronted Randy when he entered the house. Finally, as discussed in Part IB above, there was sufficient evidence supporting the finding that Ceja kicked Randy.
 
 
 21
 2. Consideration Given to Each Mitigating Circumstance
 
 
 22
 Ceja contends that the sentencing court failed to give sufficient weight to each "mitigating circumstance because it had no guidance on the level of proof necessary to establish a mitigating circumstance." The Arizona courts were required to consider all mitigating evidence offered by Ceja, Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973 (1978), and it is apparent that they did so. It was for the Arizona courts to "determine the weight to be given [that] evidence." Eddings v. Oklahoma, 455 U.S. 104, 114-15, 102 S.Ct. 869, 877, 71 L.Ed.2d 1 (1982).
 
 
 23
 3. Weighing All Mitigating Circumstances Together
 
 
 24
 Ceja also contends that the sentencing court "did not consider 'the combined moral weight of all the mitigating evidence.' " The Arizona courts were not required to discuss each piece of evidence offered in mitigation. Jeffers v. Lewis, 38 F.3d 411, 418 (9th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1709, 131 L.Ed.2d 570 (1995). Nonetheless, the sentencing court's oral decision demonstrates that it carefully considered the mitigation evidence offered by Ceja. The sentencing court was not impressed with this evidence in isolation or in total. It concluded "there are no mitigating circumstances sufficiently substantial to call for leniency" (emphasis added). In contrast, in Smith v. McCormick the state trial and appellate courts discounted each mitigating circumstance separately and concluded that " 'no mitigating circumstance was sufficiently substantial to call for leniency.' " 914 F.2d 1153, 1168 (9th Cir.1990) (emphasis added by Smith panel) (quoting Montana Supreme Court).
 
 
 25
 The Arizona Supreme Court need not have reweighed the aggravating and mitigating circumstances after Ceja's 1979 resentencing because the sentencing court had found the (F)(6) circumstance based upon an adequate narrowing construction provided in 1977. Cf. Richmond v. Lewis, 506 U.S. 40, 49, 113 S.Ct. 528, 535, 121 L.Ed.2d 411 (1992) ("Where the death sentence has been infected by a vague ... aggravating factor, the state appellate court ... must actually perform a new sentencing calculus."). Even if reweighing had been required, the Arizona Supreme Court complied by reweighing the aggravating and mitigating circumstances and "find[ing] no mitigating circumstances [that] would indicate the inappropriateness of the death penalty." Ceja, 612 P.2d at 496.
 
 
 26
 E. Arizona Supreme Court's Failure to Conduct Proportionality Review (Claim 28)
 
 
 27
 Ceja contends that his equal protection and due process rights were violated when the Arizona Supreme Court failed to conduct a proportionality review, as was its stated practice at the time it reviewed Ceja's death sentence. There is no federal right to proportionality review, Pulley v. Harris, 465 U.S. 37, 50-51, 104 S.Ct. 871, 879-80, 79 L.Ed.2d 29 (1984), and the Arizona Supreme Court has since abandoned the practice. State v. Salazar, 173 Ariz. 399, 844 P.2d 566, 583-84 (1992), cert. denied, 509 U.S. 912, 113 S.Ct. 3017, 125 L.Ed.2d 707 (1993). Ceja contends, however, that the Arizona Supreme Court's failure to conduct a proportionality review deprived him of a state created liberty interest. Moran v. Godinez resolves this issue. 40 F.3d 1567 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 479, 133 L.Ed.2d 407 (1996). "Only the denial or misapplication of state procedures that results in the deprivation of a substantive right will implicate a federally recognized liberty interest." 40 F.3d at 1574. The Arizona Supreme Court conducted proportionality reviews to insure that the sentence of death was not "disproportionate to the penalty imposed in similar cases." State v. Richmond, 114 Ariz. 186, 560 P.2d 41, 51 (1976), cert. denied, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977). Arizona's application of an adequately narrowed aggravating circumstance insured that Ceja's substantive right to be free from a disproportionate sentence was not violated. Cf. Walton, 497 U.S. at 656, 110 S.Ct. at 3058-59.
 
 
 28
 F. Abandoned Claims (Claims 9, 17, 25-27, 29, 30, 32 and 33)
 
 
 29
 Ceja does not discuss in his briefs the district court's summary judgment of claims 9, 17, 25-27, 29, 30, 32, and 33. Ceja waives these claims. See Guam v. Reyes, 879 F.2d 646, 648 (9th Cir.1989) (issues not raised in appellant's brief normally deemed waived); Zimmerman v. Bishop Estate, 25 F.3d 784, 788-789 (9th Cir.) (failure to challenge district court's holding on issue waives any objection), cert. denied, 513 U.S. 1043, 115 S.Ct. 637, 130 L.Ed.2d 543 (1994).
 
 
 30
 II. Claims Rejected on the Basis of Procedural Default
 
 
 31
 A. Contested Claims Based on Alleged Errors at Trial and Sentencing (Claims 1-3, 5-7, 11, and 41)
 
 1. Procedural Default
 
 32
 Ceja contends that federal review of claims 1-3, 5-7, 11, and 41 is not barred because the Arizona courts rejected these claims on the merits in state collateral proceedings. Arizona concedes that claim 41 was rejected on the merits and is therefore properly reviewable on the merits. But it disputes Ceja's contention with respect to the other claims.
 
 
 33
 We will not review the merits of a federal habeas claim when the "state court declined to address [the] prisoner's federal claims because the prisoner [ ] failed to meet a state procedural requirement." Coleman v. Thompson, 501 U.S. 722, 730, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991). In that instance, "the state judgment rests on independent and adequate state procedural grounds." Id. A state court's rejection of federal constitutional claims on the merits, however, does not rest on independent and adequate state law grounds. Id. at 733, 111 S.Ct. at 2556 (habeas review not barred where state court decision is " 'interwoven with [ ] federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion' ") (quoting Michigan v. Long, 463 U.S. 1032, 1040-41, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983)).
 
 
 34
 In Ceja's second Rule 32 proceeding, the trial court rejected his claims "for the reasons stated in Response to Petitioner's Petition for Post Conviction Relief...." In that brief, Arizona argued inconsistently that claims 1-3, 5-7, 11 were previously reviewed on the merits and waived: "[A]ll of petitioner's grounds are precluded because petitioner either knowingly, intelligently and voluntarily withheld them on direct appeal or his previous Rule 32 proceeding, or they have been previously determined against petitioner's position on the merits." The Arizona Supreme Court denied review.
 
 
 35
 Preclusion does not provide a basis for federal courts to apply a procedural bar. See Maxwell v. Sumner, 673 F.2d 1031, 1034-35 (9th Cir.), cert. denied, 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982). By adopting Arizona's mixed arguments of preclusion and waiver with respect to these claims, the state court in Ceja's second Rule 32 proceeding did not clearly base its decision on independent and adequate state law grounds.
 
 2. Merits
 
 36
 We disagree with the district court's conclusion that these claims are procedurally barred, but nonetheless reject them on their merits. See Garcia v. Bunnell, 33 F.3d 1193, 1195 (9th Cir.1994) (court may affirm on any ground supported by the record), cert. denied, --- U.S. ----, 115 S.Ct. 1374, 131 L.Ed.2d 229 (1995).
 
 
 37
 a. Exclusion of Jurors for Their Views on Capital Punishment (Claim 1)
 
 
 38
 Ceja contends that the trial court improperly "death qualified" the jury, even though jurors would not be required to make any determination with regard to punishment. A prospective juror may be excused because of her views on capital punishment if "those views would prevent or substantially impair the performance of her duties as a juror." Hendricks v. Vasquez, 974 F.2d 1099, 1103 (9th Cir.1992). The state trial court made clear to the jury that it would not be responsible for determining punishment, but alerted the jury to the fact that the death penalty could be imposed by the court. The court then asked jurors whether in light of this fact, their views on capital punishment would "preclude them from finding and determining the evidence" as they saw it. Two jurors responded affirmatively and were excused. Excusing these jurors was not inappropriate. See Hendricks, 974 F.2d at 1103; see also Lockhart v. McCree, 476 U.S. 162, 172, 106 S.Ct. 1758, 1764, 90 L.Ed.2d 137 (1986) (" 'nullifiers' may properly be excluded from the guilt-phase jury"); see also State v. Salazar, 173 Ariz. 399, 844 P.2d 566 (1992) (death qualification of Arizona jury was not error), cert. denied, 509 U.S. 912, 113 S.Ct. 3017, 125 L.Ed.2d 707 (1993).
 
 
 39
 b. Admission of Custodial Statement Without a Voluntariness
 
 Hearing (Claim 2)
 
 40
 The trial court at Ceja's first trial made a finding that his custodial statement was voluntary. Ceja did not challenge the voluntariness of his custodial statement before the retrial. The facts he points to now do not support such a motion. Detective Ysasi's urging Ceja to tell the truth and employing a "good cop" persona did not render Ceja's statements involuntary. See United States v. Leon Guerrero, 847 F.2d 1363, 1366 (9th Cir.1988). His trial counsel was not required to file another suppression motion at the retrial which would have been "meritless on the facts and the law." Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir.), cert. denied, 513 U.S. 1001, 115 S.Ct. 513, 130 L.Ed.2d 420 (1994).
 
 
 41
 c. Failure to Exclude Gruesome Photos (Claim 3)
 
 
 42
 The allegedly prejudicial photos are no longer available for us to review because the trial court purged its files on February 22, 1984. Nonetheless, (1) the prosecution's case hinged primarily on Ceja's confession, and (2) Ceja was convicted without admission of the photos in his first trial. The admission of the photos did not render Ceja's trial "fundamentally unfair." McKinney v. Rees, 993 F.2d 1378, 1380 (9th Cir.), cert. denied, 510 U.S. 1020, 114 S.Ct. 622, 126 L.Ed.2d 586 (1993).
 
 
 43
 d. Improper Closing Argument (Claim 5)
 
 
 44
 Ceja complains that the prosecutor made a variety of improper remarks in closing argument. "Counsel are given latitude in the presentation of their closing arguments, and courts must allow the prosecution to strike hard blows based on the evidence presented and all reasonable inferences therefrom." United States v. Baker, 10 F.3d 1374, 1415 (9th Cir.1993) (internal quotations omitted), cert. denied, 513 U.S. 934, 115 S.Ct. 330, 130 L.Ed.2d 289 (1994). We have reviewed the transcript of the prosecutor's closing argument and are satisfied that the error, if any, "did not amount to a miscarriage of justice." United States v. Parker, 991 F.2d 1493, 1499 (9th Cir.), cert. denied, 510 U.S. 839, 114 S.Ct. 121, 126 L.Ed.2d 86 (1993).
 
 
 45
 e. Improper Felony Murder Instructions (Claim 6)
 
 
 46
 Ceja contends that the trial court's felony murder instruction relieved the state of its burden to prove an element of the offense. Ceja was charged with felony murder under former Ariz.Rev.Stat. § 13-452 ("A murder which is perpetrated ... in the perpetration of, or attempt to perpetrate ... robbery ... is murder of the first degree."). Ceja's reliance on State v. Hankins, 141 Ariz. 217, 686 P.2d 740, 746 (1984) for the necessary state law elements of felony murder is misplaced. The felony murder statute discussed in Hankins was enacted after Ceja's crimes. See Ariz.Rev.Stat. § 13-1105(A)(2) (enacted effective Oct. 1, 1978).
 
 
 47
 f. Failure to Instruct on Lesser Included Offense of Second
 
 Degree Murder (Claim 7)
 
 48
 Ceja contends that the jury should have been given the opportunity to convict him on the lesser included charge of second degree murder. In capital cases, where the evidence would permit a jury rationally to find the defendant guilty of the lesser offense and acquit him of the greater, the jury must be instructed on the lesser included offense. Vickers v. Ricketts, 798 F.2d 369, 371 (9th Cir.1986), cert. denied, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 980 (1987). In Ceja's case the evidence did not warrant a second degree murder instruction. Detective Ysasi testified that Ceja admitted to both killings during the course of his robbery of the Leons. There was also circumstantial evidence that he premeditated. Ceja took the stand and testified to an exculpatory series of events. The defendant's testimony and theory of the case did not support a second degree murder conviction. Once a juror accepted the state's theory of the case, he or she could not have rationally concluded that the killings were second degree murder. Cf. Vickers, 798 F.2d at 371 (finding of premeditation was required for first degree murder conviction where no felony murder was alleged). Based on the record evidence, due process did not require a second degree murder instruction.
 
 
 49
 g. Disqualification of Trial Judge (Claim 11)
 
 
 50
 Ceja contends that he was deprived of his fundamental right to a fair and disinterested tribunal at the 1979 aggravation and mitigation hearing because the presiding judge had been subjected to his (Ceja's) "profanities and vulgarities" while on a tour of Arizona's death row. The sentencing judge sua sponte recounted the episode, which had occurred approximately two years earlier, in order to afford Ceja the opportunity to move for disqualification before proceeding. The judge indicated his absolute confidence that the episode would not affect his ability to apply Arizona sentencing standards impartially. He further afforded defense counsel the opportunity to discuss the matter with Ceja. After doing so, defense counsel indicated--in Ceja's presence--that the defense would not challenge the judge. Ceja was certainly entitled to a fair and disinterested tribunal, but there is nothing in the record to suggest that he was deprived of this right. See Standing Committee on Discipline v. Yagman, 55 F.3d 1430, 1443 (9th Cir.1995) ("a party cannot force a judge to recuse himself by engaging in personal attacks on the judge"); United States v. Wolfson, 558 F.2d 59, 62 (2d Cir.1977) (defendant's remarks "only establish[ed his] feelings towards [the judge], not the reverse").
 
 
 51
 h. Cumulative Effect of All Errors (Claim 41)
 
 
 52
 Multiple errors, even if harmless individually, may entitle a petitioner to habeas relief if their cumulative effect prejudiced the defendant. Mak v. Blodgett, 970 F.2d 614, 622 (9th Cir.1992), cert. denied, 507 U.S. 951, 113 S.Ct. 1363, 122 L.Ed.2d 742 (1993). No such cumulation of errors prejudiced Ceja.
 
 
 53
 B. Alleged Errors That Ceja Admits Were Not Prejudicial (Claims 4, 8, 14, 31, 34-36, 38, and 40)
 
 
 54
 As to claims 4, 8, 14, 31, 34-36, and 38 Ceja concedes that he is unable to show prejudice. We need not determine whether these claims are procedurally barred. If Ceja cannot show prejudice, he cannot prevail on the merits.
 
 
 55
 In his opening brief, Ceja also conceded that he could not show prejudice as to claim 40. He attempts to revoke this concession by arguing its merits for the first time in his reply brief. He contends that State v. Richmond, 180 Ariz. 573, 886 P.2d 1329 (1994), decided after his opening brief was filed, entitles him to an evidentiary hearing on this question. Ceja has waived this claim. Gray v. Lewis, 881 F.2d 821, 823 n. 3 (9th Cir.), cert. denied, 493 U.S. 996, 110 S.Ct. 549, 107 L.Ed.2d 546 (1989).
 
 
 56
 C. Ineffective Assistance of Counsel (Claims 10, 37, and 39)
 
 
 57
 Ceja contends that the state court's determination that his ineffective assistance of counsel claims were waived does not bar federal review because Arizona's waiver rules are applied inconsistently in death penalty cases. It is unnecessary for us to consider this issue because Ceja cannot prevail on the merits.
 
 
 58
 Ceja must demonstrate that his counsels' performance was deficient and that these deficiencies prejudiced him. See Strickland v. Washington, 466 U.S. 668, 686-87, 104 S.Ct. 2052, 2063-64, 80 L.Ed.2d 674 (1984). In establishing prejudice, Ceja "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068. Most of Ceja's ineffective assistance of counsel arguments are linked directly to his other claims raised in this petition. He contends that his counsel should have (1) objected to the trial judge's "death qualification" of the jury venire, (2) prevented the prosecution from admitting Ceja's custodial statements without a voluntariness hearing, and (3) objected to the prosecutor's closing remarks. We have held that the trial court did not err in empaneling the jury, admitting the custodial statements, and permitting the prosecutor's remarks. Even if Ceja's counsel had made timely objections or had raised these issues on appeal, there is not a reasonable probability that the result would have been different.
 
 
 59
 Ceja's other ineffective assistance of counsel arguments also fail Strickland's prejudice prong. He contends that in preparing for trial, his counsel should have interviewed more witnesses, and that in preparing for the sentencing hearing, his counsel should have investigated Arizona's evidence of the alleged kick. But Ceja fails to explain what compelling evidence additional interviews would have unearthed or to explain how an investigation of aggravation evidence would have negated the evidence of the multiple gunshot wounds. Moreover, as we have noted, the medical examiner's post-sentencing affidavit did not contradict the testimony regarding Ceja's kick to Randy's head.
 
 
 60
 When the clerk of this court issues the mandate in this case, the stay of execution pending appeal shall be of no further force and effect.
 
 
 61
 AFFIRMED.
 
 
 62
 FLETCHER, Circuit Judge, concurring in part, dissenting in part:
 
 
 63
 I concur in the judgment to the extent the majority opinion affirms the district court's denial of Ceja's habeas challenge to his conviction. I respectfully dissent from the affirmance of Ceja's sentence.
 
 
 64
 I would hold that the Arizona courts' failure to find the F(6) aggravating factor beyond a reasonable doubt was constitutional error that had a substantial and injurious effect on the sentence. I disagree with the majority that we may presume that the Arizona courts found the F(6) factor beyond a reasonable doubt. Nowhere in the trial court or state supreme court's opinions is there any reference to having found the factor beyond a reasonable doubt. Arizona's death penalty statute does not by its terms provide that aggravating factors must be proven beyond a reasonable doubt. See State v. Jordan, 126 Ariz. 283, 614 P.2d 825, 828, cert. denied, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980) ("The statute does not indicate the degree of certainty with which these circumstances must be established."). It was not until one month after Ceja's sentence was affirmed by the Arizona Supreme Court that the Arizona Supreme Court first held that Arizona's death penalty statute required that aggravating factors be proved beyond a reasonable doubt. Jordan, 614 P.2d at 828.
 
 
 65
 We presume that state courts follow the law. Jeffers v. Lewis, 38 F.3d 411, 415 (9th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1709, 131 L.Ed.2d 570 (1995). Thus, we presumed that the Arizona Supreme Court applied the reasonable doubt standard to an appeal decided shortly after Jordan was decided. Clark v. Ricketts, 958 F.2d 851, 860 (9th Cir.), cert. denied, 506 U.S. 838, 113 S.Ct. 117, 121 L.Ed.2d 73 (1992). However, we have never presumed that state courts follow law that has not yet been decided. Cf. Southern Pac. Co. v. Jensen, 244 U.S. 205, 222, 37 S.Ct. 524, 531, 61 L.Ed. 1086 (1917) (Holmes, J., dissenting) (law is not a "brooding omnipresence in the sky but the articulate voice of some sovereign or quasi-sovereign that can be identified"). That the Arizona Supreme Court subsequently stated that it had "always assumed ... that the state must prove the existence of aggravating circumstances beyond a reasonable doubt," Jordan, 614 P.2d at 828, is not evidence that it found the F(6) factor in Ceja's case. This is essentially a post-decision statement by the members of the Arizona Supreme Court as to their mental processes at the time they affirmed Ceja's sentence, which may not be used as evidence in a subsequent challenge to the decision. See Fayerweather v. Ritch, 195 U.S. 276, 306-07, 25 S.Ct. 58, 67-68, 49 L.Ed. 193 (1904) (testimony of the mental processes of a judge not to be considered); Perkins v. LeCureux, 58 F.3d 214, 220 (6th Cir.) ("[P]ost-decision statements by a judge ... about his mental processes in reaching decision may not be used as evidence in a subsequent challenge to the decision.") (quoting Proffitt v. Wainwright, 685 F.2d 1227, 1255 (11th Cir.1982) (relying on Fayerweather)), cert. denied, --- U.S. ----, 116 S.Ct. 526, 133 L.Ed.2d 432 (1995). A state cannot excuse its failure to find the existence of an aggravating factor beyond a reasonable doubt by stating in a later opinion that it had always assumed that reasonable doubt was required, although up to that time it had never so held or even implied in any of its opinions.
 
 
 66
 This failure by the Arizona courts to find the F(6) factor beyond a reasonable doubt violated Ceja's constitutional rights. Although sentencing factors are not elements of the crime and generally do not require a heightened standard of proof, United States v. Restrepo, 946 F.2d 654 (9th Cir.1991) (en banc), cert. denied, 503 U.S. 961, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992), the Supreme Court has recognized "that there may be an exception to the general rule that the preponderance standard satisfies due process when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction." Id. at 659 (citing McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)). The difference between life and death decided on the basis of whether an aggravating factor exists warrants such an exception, particularly in light of the Eighth Amendment's "guarantee against the arbitrary or capricious imposition of the death penalty." Lewis v. Jeffers, 497 U.S. 764, 782, 110 S.Ct. 3092, 3103, 111 L.Ed.2d 606 (1990).
 
 
 67
 The Supreme Court's opinion in Lewis v. Jeffers further supports the conclusion that aggravating factors used to determine whether a defendant will be executed must be proven beyond a reasonable doubt. In Lewis, the Supreme Court held that the appropriate standard of federal habeas review of a state court's application of an aggravating circumstance is the "rational factfinder" standard established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), i.e., "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 497 U.S. at 781, 110 S.Ct. at 3102-03 (quoting Jackson, 443 U.S. at 319, 99 S.Ct. at 2789 (citation omitted)). The Court explained, "Although aggravating circumstances are not 'elements' of any offense, the standard of federal review for determining whether a state court has violated the Fourteenth Amendment's guarantee against wholly arbitrary deprivations of liberty is equally applicable in safeguarding the Eighth Amendment's bedrock guarantee against the arbitrary or capricious imposition of the death penalty." Id. at 782, 110 S.Ct. at 3103. Because federal courts must review for whether any rational trier of fact could have found the essential elements of the aggravating factor beyond a reasonable doubt, the trier of fact is required to find the elements beyond a reasonable doubt. If, by contrast, the sentencer needed to find the elements underlying the aggravating factor only by a preponderance of the evidence, the federal court's review would be whether any rational trier of fact could have found the elements by a preponderance of the evidence. Cf. Creech v. Arave, 947 F.2d 873, 882 (9th Cir.1991), rev'd in part on other grounds, 507 U.S. 463, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993) (overturning a death sentence in a habeas proceeding because the trial court failed to find specific intent "beyond a reasonable doubt," without discussing whether the reasonable doubt requirement was based on federal or state law).
 
 
 68
 I would thus hold that Ceja has an Eighth Amendment right not to be put to death on the basis of aggravating factors not found beyond a reasonable doubt by the trier of fact. The Arizona courts' failure to find the F(6) factor beyond a reasonable doubt had a "substantial and injurious effect on the verdict" of death that warrants reversal on habeas review. Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 1721-22, 123 L.Ed.2d 353 (1993); see Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (constitutionally erroneous reasonable-doubt instruction warrants reversal of conviction on habeas review).
 
 
 69
 Because the Arizona courts' failure to find the F(6) factor beyond a reasonable doubt warrants the setting aside of Ceja's sentence, I would not reach Ceja's other challenges to his sentence. As the majority rejects these challenges, however, I note my disagreement on three additional claims.
 
 
 70
 First, I disagree with the majority that a rational factfinder could have found the F(6) factor beyond a reasonable doubt. There was not sufficient admissible evidence to support the finding that Ceja repeatedly kicked Randy Leon in the head. The only evidence the majority cites in support of this finding is detective Ysasi's statement at the sentencing hearing that he "did not know why [Ceja] kicked [Randy] in the head." However, Detective Ysasi's statement came in response to a question that assumed the fact of kicking without adequate foundation, so the statement is not itself evidence that Ceja kicked Randy Leon. Regardless of whether the evidence that Ceja shot Linda Leon four times and Randy Leon six times is sufficient to establish heinousness or depravity, cf. Richmond v. Lewis, 506 U.S. 40, 51, 113 S.Ct. 528, 536-37, 121 L.Ed.2d 411 (1982), the F(6) finding cannot stand. The Arizona Supreme Court's determination that the killings were heinous and depraved was based upon "the totality of the circumstances of both killings," State v. Ceja, 126 Ariz. 35, 612 P.2d 491, 495 (1980). Thus, if the evidence was insufficient to support the kicking finding, the supreme court would have to reexamine the totality of other circumstances, absent any kicking, to determine whether the killings were heinous or depraved.
 
 
 71
 Second, I disagree with the majority that Arizona had adequately narrowed and applied the F(6) factor at the time of Ceja's sentencing. Ceja's death sentence is premised on a single statutory aggravating factor-that "[t]he defendant committed the offense in an especially heinous, cruel or depraved manner." Ariz.Rev.Stat. § 13-703(F)(6). As the majority acknowledges, this factor is facially vague. Walton v. Arizona, 497 U.S. 639, 652-55, 110 S.Ct. 3047, 3056-58, 111 L.Ed.2d 511 (1990); see also Maynard v. Cartwright, 486 U.S. 356, 363-64, 108 S.Ct. 1853, 1858-59, 100 L.Ed.2d 372 (1988) (holding that Oklahoma's "especially heinous, atrocious, or cruel" aggravating circumstance is unconstitutionally vague). Whether this facially vague aggravating factor had been constitutionally narrowed so that the sentencer's "discretion [was] suitably directed and limited," Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), is a federal issue subject to de novo review. See Walton, 497 U.S. at 652-55, 110 S.Ct. at 3056-58; Maynard, 486 U.S. at 361, 108 S.Ct. at 1857-58.
 
 
 72
 The Arizona Supreme Court had not sufficiently narrowed the F(6) factor prior to Ceja's sentencing in 1979. At that time, the Arizona Supreme Court had decided just one major case construing the F(6) factor, State v. Knapp, 114 Ariz. 531, 562 P.2d 704 (1977), cert denied, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978).[1] Knapp states that the words "cruel, heinous, and depraved" provide sufficient guidance to the sentencer, id. at 716 ("[t]he words ... have meanings that are clear to a person of average intelligence and understanding"), a proposition that has since been squarely rejected by the Supreme Court. Walton, 497 U.S. at 654, 110 S.Ct. at 3057-58; Maynard, 486 U.S. at 363-64, 108 S.Ct. at 1858-59. In explaining what the words mean, Knapp quotes Webster's dictionary definitions of the words:
 
 
 73
 heinous: hatefully or shockingly evil: grossly bad.
 
 
 74
 cruel: disposed to inflict pain esp. in a wanton, insensate or vindictive manner: sadistic.
 
 
 75
 depraved: marked by debasement, corruption, perversion or deterioration.
 
 
 76
 Id. at 716. These equally vague definitions do not constitute sufficient narrowing. See Shell v. Mississippi, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990) (per curiam); 498 U.S. at 2-3, 111 S.Ct. at 313-14 (Marshall, J., concurring) (vagueness of "heinous" aggravating factor not cured when defined as "wicked or shockingly evil").
 
 
 77
 The Supreme Court's decision in Richmond v. Lewis provides further support for the conclusion that the Arizona Supreme Court had not adequately narrowed the F(6) factor at the time of Ceja's sentencing. Richmond was predicated on the assumption that the Arizona Supreme Court had not adequately narrowed the F(6) factor in March 1980, years after Ceja was resentenced. See Richmond, 506 U.S. at 47, 113 S.Ct. at 534 ("Respondents do not argue that the factor had been narrowed adequately prior to petitioner's resentencing. Thus it would have been error for Judge Roylston to give weight to the (F)(6) factor [at petitioner's resentencing in March 1980].") (emphasis added). As the State previously conceded that the F(6) factor had not been adequately narrowed as late as 1980 and the Supreme Court consequently held that it was error for the trial judge to give weight to that factor in 1980, I do not see how we can conclude that the trial court's decision to sentence Ceja to death on the basis of the F(6) factor in 1977 was anything but error.
 
 
 78
 The Arizona Supreme Court affirmed Ceja's death sentence in May 1980. Ceja, 126 Ariz. 35, 612 P.2d 491. The United States Supreme Court has said that even if the trial judge relied on an invalid factor, the state appellate court can cure this error by performing a new sentencing calculus. Richmond, 506 U.S. at 49, 113 S.Ct. at 535-36. Thus, if the Arizona Supreme Court had performed a new sentencing calculus, the relevant date for purposes of our review would be May 1980. But the Arizona Supreme Court did not do so.[2] Although the court found the evidence sufficient to establish the "heinous or depraved" portion of F(6), this is different from concluding that the sentencer would have found that the murder was especially heinous or depraved had its discretion been suitably guided. The court did not reweigh or engage in constitutional harmless error review.
 
 
 79
 And, lastly, unlike other cases decided at the time, the court did not do a proportionality review to determine independently whether Ceja's sentence was appropriate. I disagree with the majority that Ceja's constitutional rights were not violated by the Arizona Supreme Court's failure to engage in proportionality review. While there is no federal Constitutional right to proportionality review, Pulley v. Harris, 465 U.S. 37, 50-51, 104 S.Ct. 871, 879-80, 79 L.Ed.2d 29 (1984), state law may create liberty interests protected by the Due Process Clause. Wolff v. McDonnell, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974).
 
 
 80
 Although Arizona does not require proportionality review by statute, the Arizona Supreme Court required such review at the time that it reviewed Ceja's third death sentence, because the court then believed that it "could not conduct a 'meaningful appellate review of each death sentence' without determining whether the sentence of death is disproportionate to the penalty imposed in similar cases." State v. White, 168 Ariz. 500, 815 P.2d 869, 888 (1991) (quoting State v. Richmond, 114 Ariz. 186, 560 P.2d 41, 51 (1976), cert. denied, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977)), cert. denied, 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992). In 1992, a reconstituted court held that proportionality review was no longer required because of perceived defects in the way the reviews were conducted and the court's belief that other safeguards in the state's capital punishment scheme were adequate. State v. Salazar, 173 Ariz. 399, 844 P.2d 566, 583 (1992), cert. denied, 509 U.S. 912, 113 S.Ct. 3017, 125 L.Ed.2d 707 (1993); White, 815 P.2d at 886-93.
 
 
 81
 "State law ... that guarantees a criminal defendant procedural rights at sentencing, may give rise to a state-created liberty interest protected from arbitrary deprivation by the Fourteenth Amendment's Due Process clause." Jeffers v. Lewis, 38 F.3d 411, 415 (9th Cir.1994). Integral aspects of a state's capital sentencing scheme that ensure fairness and uniformity create liberty interests protected by the Due Process Clause.
 
 
 82
 [W]here a state has provided a specific method for the determination of whether the death penalty shall be imposed, "it is not correct to say the defendant's interest" in having that method adhered to "is merely a matter of state procedural law." Id. at 346, 100 S.Ct. at 2229.
 
 
 83
 Fetterly v. Paskett, 997 F.2d 1295, 1300 (9th Cir.1993), amended, 15 F.3d 1472 (9th Cir.1994) (finding a cognizable due process claim based upon the trial judge's failure to comply with an Idaho statute requiring that each individual aggravating circumstance be weighed against all mitigating factors), cert. denied, 513 U.S. 914, 115 S.Ct. 290, 130 L.Ed.2d 205 (1994).
 
 
 84
 The Supreme Court has required states to adopt capital punishment procedures that assure reliability in sentencing determinations. Barclay v. Florida, 463 U.S. 939, 958-59, 103 S.Ct. 3418, 3429-30, 77 L.Ed.2d 1134 (1983) (Stevens, J., concurring). As we noted in Fetterly,
 
 
 85
 [p]art of the requirement of reliability is "that the reasons present in one case will reach a similar result to that reached under similar circumstances in another case." Because Fetterly may not have been sentenced to death as prescribed by [Idaho law], this goal of similar sentences in similar cases may not have been met. If the sentencing judge did not follow Idaho's statutory procedures in Fetterly's case, others similarly sentenced in Idaho have been and will necessarily be treated differently....
 
 
 86
 997 F.2d at 1299 (internal citations omitted). The same can be said here: The Arizona Supreme Court's failure to conduct a proportionality review in Ceja's case means that others similarly sentenced in Arizona were treated differently. A state may not "ignore the essentials of its own Gregg required rules regarding the manner in which the core decision of who shall live and who shall die is made.... By definition, the life or death decision necessarily becomes arbitrary if the manner in which it is made is not authorized by the controlling law." Fetterly, 15 F.3d at 1483 (Trott, J., concurring in denial of request for en banc review). A state may choose merely to narrow its aggravating circumstances as a way of ensuring reliability in its sentencing. Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). However, once a state uses particular procedures such as proportionality review to ensure reliability and equity among defendants, these procedures must be applied equally to all defendants. The Arizona Supreme Court considered proportionality review to be an integral part of a scheme to ensure that imposition of death sentences was not "excessive or disproportionate" at the time it affirmed Ceja's sentence. Richmond, 560 P.2d at 51. Thus, Ceja was constitutionally entitled to such a review.[3] Cf. Collins v. Francis, 728 F.2d 1322 (11th Cir.) (although proportionality review is not constitutionally mandated, once a state establishes a right to such review defendants have a constitutional right to have it conducted fairly), cert. denied, 469 U.S. 963, 105 S.Ct. 361, 83 L.Ed.2d 297 (1984); Campbell v. Blodgett, 997 F.2d 512, 522 (9th Cir.1992) (Washington law requiring the state supreme court to review each capital sentence imposed to determine whether the sentence of death was imposed through passion or prejudice created for capital defendants a protected liberty interest in having such a review), cert. denied, 511 U.S. 1118, 114 S.Ct. 2125, 128 L.Ed.2d 682 (1994); United States v. Woodruff, 50 F.3d 673 (9th Cir.1995) (Nevada law requiring court to review and make particularized findings that it is "just and proper" for defendant to be adjudged habitual offender creates constitutionally protected liberty interest).[4]
 
 
 87
 As these errors had a substantial and injurious effect on the sentence, I would grant the petition for writ of habeas corpus to the extent of setting aside Ceja's death sentence.
 
 
 
 [1]
 The district court found issue 13 procedurally barred. However, because it is premised on one of the arguments underlying issue 12, we consider it on the merits
 
 
 [1]
 The Arizona Supreme Court had also decided State v. Richmond, 114 Ariz. 186, 560 P.2d 41 (1976), cert. denied, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977), State v. Blazak, 114 Ariz. 199, 560 P.2d 54 (1977), and State v. Watson, 120 Ariz. 441, 586 P.2d 1253 (1978), cert. denied, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979), and its previous opinion in Ceja, 115 Ariz. 413, 565 P.2d 1274 (1977), cert. denied, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977) at the time of Ceja's resentencing. None of these cases provide sufficient narrowing. In Richmond, the defendant claimed that the F(6) factor was imprecise and indefinite, but, because the court upheld the sentence on the basis of another aggravating factor, the court did not reach the issue. In Blazak, the court upheld the F(6) factor but did not explain why. In Watson, the court reversed a finding of "cruel, heinous or depraved" where the killing was part of a shoot out, but again did not set forth a standard for differentiating between murder that meets the standard and murder that does not. In Ceja, 115 Ariz. 413, 565 P.2d 1274, the court affirmed Ceja's first death sentence, concluding that the facts of Ceja's killing reflected a " 'shockingly evil' state of mind 'marked by debasement' "-the dictionary definitions of the words. Id. 565 P.2d at 1278. The decision notes the additional violence imposed by Ceja. The court does not hold that "heinousness or depravity" requires additional violence above and beyond that necessary to kill the victim and then direct the trial court to apply this narrowing construction, however. Rather, the court sets forth the reasons it believes Ceja's crime was heinous and depraved. This does not provide sufficient guidance for the sentencer. It was not until years later that the court relied on the facts of Ceja's case and others to formulate five factors for the sentencer to consider in determining whether a killing was heinous or depraved. See State v. Gretzler, 135 Ariz. 42, 659 P.2d 1, 11 (1983)
 
 
 [2]
 Thus, the case is distinguishable from Woratzeck v. Stewart, 97 F.3d 329 (9th Cir.1996) (concluding that the F(6) factor had been adequately narrowed and applied by the Arizona Supreme Court in December 17, 1982 when the Court affirmed Woratzeck's sentence). While the Woratzeck panel applied the date the Arizona Supreme Court affirmed Woratzeck's sentence, presumably because the Court performed a new sentencing calculus, I would apply the date the trial court resentenced Ceja, because the Arizona Supreme Court did not perform a new sentencing calculus on appeal. Also, I note that Woratzeck's sentence was imposed two years after Ceja's and that his conviction was affirmed three years after Ceja's conviction was affirmed. That the F(6) factor was sufficiently narrowed at the time Woratzeck's sentence was affirmed does not control whether the F(6) factor was sufficiently narrowed five years earlier when Ceja was sentenced, or three years earlier when Ceja's sentence was affirmed
 
 
 [3]
 Moran v. Godinez, 40 F.3d 1567 (9th Cir.), amended, 57 F.3d 690 (9th Cir.1994), cert denied, --- U.S. ----, 116 S.Ct. 479, 133 L.Ed.2d 407 (1995) is not to the contrary. There, the question was whether Nevada created a protected liberty interest by requiring the state to demonstrate that a defendant was competent when he changed his plea to guilty. We held only that, in that particular instance, the violation of Nevada law did not result in the deprivation of a substantive right. In other cases, such as Fetterly and Campbell, we have found sentencing procedures to create protected liberty interests
 
 
 [4]
 I disagree with the majority's reasoning in two additional respects that do not affect the result. First, the fact that Ceja was convicted without admission of the photographs in his first trial in no way resolves the question whether admission of the photographs in the second trial violated his constitutional rights. The first conviction was reversed because of prejudicial error in permitting hearsay testimony; it thus cannot be relied on for the conclusion that Ceja would have been convicted anyway even without introduction of the photographs. Nevertheless, I would affirm the conviction because the introduction of the photographs did not make the trial "fundamentally unfair." Batchelor v. Cupp, 693 F.2d 859, 865 (9th Cir.1982) (finding no error in trial court's admission of photographs of victim's body), cert. denied, 463 U.S. 1212, 103 S.Ct. 3547, 77 L.Ed.2d 1395 (1983)
 Second, because of the principle that we may address an issue not raised in the opening brief or in the district court if it "arises while the appeal is pending because of a change in law," see Gates v. Deukmejian, 987 F.2d 1392, 1408 (9th Cir.1992), I would address Ceja's fortieth claim, that additional mitigation established since sentencing requires resentencing. Even if we address this claim, however, it is without merit. The case Ceja cites for this proposition, State v. Richmond, simply acknowledges the possibility that a defendant would be entitled to present new evidence of mitigation if his case is remanded to the trial court for a new sentencing hearing. 886 P.2d at 1337. Nowhere does the opinion suggest that mitigation developed after sentencing by itself provides grounds for a new sentencing hearing.