Clyde Edwin SEIDEL, Petitioner–
Appellee,

v.

W.A. MERKLE, Warden, Respondent–
Appellant.

No. 97–15786.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 9, 1998.

Decided July 20, 1998.

Rene A. Chacon, Deputy Attorney General, San Francisco, CA, for Respondent–Appellant.

Arthur Pirelli, San Francisco, CA, for Petitioner–Appellee.

Before: D.W. NELSON, REINHARDT, and WIGGINS, Circuit Judges.

D.W. NELSON, Circuit Judge:

Clyde Edwin Seidel, a California state prisoner, is serving a sentence of sixteen years to life for his second-degree murder conviction. Seidel petitioned the District Court for the Northern District of California for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On reviewing the record from the state court proceedings in connection with the petition, the district court found that Seidel had stated a cognizable claim of ineffective assistance of counsel and issued an Order to Show Cause why a writ should not issue. The district court then *sua sponte* ordered an evidentiary hearing on Seidel's allegations of ineffective assistance of counsel, referring the matter to a federal magistrate judge. The district court later adopted the magistrate judge's finding of constitutionally deficient representation and granted Seidel's federal habeas petition.

The State of California now appeals, arguing (1) that the district court erred in holding

an evidentiary hearing without first requiring Seidel to demonstrate cause and prejudice; and (2) that even if the evidentiary hearing was properly held, the district court erred in concluding that Seidel received ineffective assistance of counsel at trial.

We have jurisdiction over this timely appeal under 28 U.S.C. §§ 1291 and 2253, and we affirm the district court's order granting Seidel's petition for a writ of habeas corpus.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts surrounding the underlying second-degree murder conviction are not in dispute. On June 1, 1990, early in the evening, Seidel went to visit his girlfriend, Angela Davis, at the trailer park where she lived. Approximately thirty minutes after Seidel arrived, Davis's neighbor, Dorina Canfield, appeared at Davis's trailer and explained that she and her husband, Jade Bucholz, had just had an argument. Canfield believed that she was in danger of harm from Bucholz, so Davis and Seidel encouraged her to stay with them in Davis's trailer for the evening.

Later that evening, Seidel decided to drive to the grocery store in his pick-up truck, accompanied by Canfield and by Davis's two daughters. As Seidel started his truck, Bucholz approached the truck's window on the passenger side, where Canfield was sitting, and husband and wife began screaming and fighting.

Seeing that Bucholz was "jerking" at the passenger door, Seidel got out of his truck and approached Bucholz. Bucholz kicked Seidel, who was holding a knife in his hand, and took a few swings in his direction. Seidel then attacked Bucholz, and the two fell to the ground in a struggle. During the fight, Bucholz received a mortal wound in the chest. Seidel fled the scene in his truck, and was apprehended by local law enforcement later that night. He was arrested and eventually charged with one count of murder in violation of California Penal Code § 187.

The day after the murder, Seidel gave a statement to the police explaining that he had removed his knife from its sheath only after Bucholz punched him in the head. Seidel reported that he was "scared for his life," and "never meant to hurt him ... never meant to cut him at all." In Seidel's words, Bucholz "fell on the knife" during their struggle.

At trial in Humboldt County Superior Court, Seidel did not take the stand. His counsel relied solely on a theory of self-defense. On November 22, 1991, a jury convicted Seidel of second-degree murder, and the trial court sentenced him to a term of sixteen years to life in prison.

Seidel's trial counsel petitioned the court for a new trial or, in the alternative, a modification of his conviction to a lesser crime. The trial court denied both motions. Seidel then requested and was assigned new counsel based on his claim of ineffective representation at trial. On the advice of new counsel, Seidel filed a writ of habeas corpus in state court, alleging that he had been deprived of a meritorious defense due to trial counsel's ineffectiveness. The state habeas petition referenced the fact that the record contained evidence that Seidel suffered from Post–Traumatic Stress Disorder ("PTSD").

The state trial court subsequently granted Seidel's motion for the appointment of an expert psychologist to examine him. After a three-hour clinical interview during which multiple tests were administered, Dr. Paul Koller concluded that Seidel "manifests several clear symptoms" of PTSD. Dr. Koller also found that Seidel shows "some residual brain damage and long-term memory impairment."

After reviewing Dr. Koller's report, the state trial court nevertheless denied Seidel's habeas petition. On April 19, 1993, the California Court of Appeal affirmed Seidel's conviction, and the California Supreme Court denied Seidel's petition for review a few months later.

On March 10, 1994, Seidel filed a federal habeas petition under 28 U.S.C. § 2254 in the District Court for the Northern District of California. In an order dated February 2, 1995, Judge Eugene F. Lynch found that Seidel had stated a cognizable ineffective assistance claim and issued an Order to Show Cause why a writ should not issue. On

October 11, 1995, Judge Lynch *sua sponte* ordered an evidentiary hearing on Seidel's allegations of ineffective assistance of state trial counsel. The State moved for reconsideration, arguing that under the Supreme Court's decision in *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), Seidel was required to demonstrate both cause for his failure to develop the facts in state court and actual prejudice resulting from that failure. Judge Lynch denied the State's motion for reconsideration.

On November 15, 1996, United States Magistrate Judge F. Steele Langford conducted an evidentiary hearing at which four witnesses testified, including Seidel's trial counsel and Seidel himself. Magistrate Judge Langford concluded that trial counsel had "conducted no investigation whatsoever of Petitioner's mental state and PTSD .... despite the fact he was put on notice." Judge Langford further found that trial counsel was constitutionally ineffective under the standards established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as "[t]here is no evidence that trial counsel's failure to present a potentially meritorious defense was strategy, rather than neglect."

On February 11, 1997, United States District Court Judge Susan Illston issued an order adopting Magistrate Judge Langford's Findings of Fact and Conclusions of Law. On March 26, 1997, Judge Illston granted Seidel's habeas petition on the basis of trial counsel's ineffective assistance. Judge Illston concluded, "Counsel's failure to pursue any investigation into Seidel's psychiatric background and subsequent failure to present any evidence to the jury regarding his mental health in support of a finding of manslaughter denied petitioner effective assistance of counsel." The State filed a timely appeal.

### STANDARD OF REVIEW

■ We review a district court's decision to grant a state prisoner's petition for a writ of habeas corpus de novo. *Dyer v. Calderon*, 122 F.3d 720, 726 (9th Cir.1997). A claim of ineffective assistance of counsel presents a mixed question of fact and law

and also receives de novo review. *Sanders v. Ratelle*, 21 F.3d 1446, 1451 (9th Cir.1994). Of course, a federal district court's factual findings and its adoption of the findings of a federal magistrate judge are reviewed for clear error. *Id.* at 1452.

### ANALYSIS

#### I. *Evidentiary Hearing*

■ The State maintains that the district court erred in granting Seidel an evidentiary hearing without first requiring him to demonstrate cause for his failure to develop the facts in state court and actual prejudice resulting from that failure. *See Keeney v. Tamayo–Reyes*, 504 U.S. 1, 11, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). For the reasons stated below, we reject the State's argument.

■ In our view, it is well-established that a federal district judge has "the power, constrained only by his sound discretion, to receive evidence bearing upon the [habeas] applicant's constitutional claim." *Townsend v. Sain*, 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Having considered the history, development, and purpose of the writ, the *Townsend* Court determined that the Supreme Court "has consistently upheld the power of the federal courts on habeas corpus to take evidence relevant to claims of such detention." *Id.* at 311, 83 S.Ct. 745. The Court in *Townsend* explained:

[A] narrow view of the hearing power would totally subvert Congress' specific aim .... of affording state prisoners a forum in the federal trial courts for the determination of claims of detention in violation of the Constitution. The language of Congress, the history of the writ, the decisions of this Court, all make clear that the power of inquiry on federal habeas corpus is plenary. Therefore, where an applicant for a writ of habeas corpus alleges facts which, if proved, would entitle him to relief, the federal court to which the application is made has the power to receive evidence and try the facts anew.

*Id.* at 312, 83 S.Ct. 745.

After describing the district court's "plenary" power to hear evidence relevant to a

habeas claim, the *Townsend* Court turned "to the considerations which in certain cases may make exercise of that power mandatory." *Id.* The Court announced the general rule that a federal evidentiary hearing is required if the habeas applicant did not receive a full and fair hearing in a state court, either at the time of the trial or in a collateral proceeding. *Id.* The *Townsend* Court then particularized its rule for purposes of guidance, identifying six specific circumstances under which a federal court must grant an evidentiary hearing to a habeas applicant. *Id.* at 313, 83 S.Ct. 745.

The *Townsend* Court's ruling could not be more clear. The Court carefully distinguished between its discussion of when a federal court in a habeas proceeding is authorized to hear additional evidence and its discussion of when a federal court is required to hear additional evidence. In fact, at the close of its decision, the *Townsend* Court added, for the sake of clarity, that "[t]he purpose of the [six-part] test is to indicate the situations in which the holding of an evidentiary hearing is mandatory. In all other cases where the material facts are in dispute, the holding of such a hearing is in the discretion of the district judge." *Id.* at 318, 83 S.Ct. 745.

In spite of the Court's lucid decision in *Townsend,* the State argues that the district court below erred in holding an evidentiary hearing because Seidel did not demonstrate "cause and prejudice," as required by the Supreme Court's ruling in *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). The issue before the *Tamayo–Reyes* Court, however, was not whether the district court was authorized to hold an evidentiary hearing, but whether the district court was required to order an evidentiary hearing under the circumstances at bar. The *Tamayo–Reyes* Court held that a habeas applicant only "is entitled to an evidentiary hearing if he can show cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure." *Id.* at 11, 112 S.Ct. 1715. The *Tamayo–Reyes* Court's decision thereby overruled and significantly narrowed the fifth part of the six-part *Townsend* test for deter-

mining when an evidentiary hearing must be held. *See id.* at 5, 112 S.Ct. 1715.

■ Contrary to what the State argues here, *Tamayo–Reyes* did not affect *Townsend's* holding with respect to the district court's broad authority to consider any evidence relevant to a federal habeas petitioner's claim. *See Tamayo–Reyes,* 504 U.S. at 23, 112 S.Ct. 1715 (O'Connor, J., dissenting) ("[T]he district courts ... still possess the discretion, which has not been removed by today's opinion, to hold hearings even where they are not mandatory."). In fact, this Court has specifically recognized that *Tamayo–Reyes* only modified the conditions under which an evidentiary hearing is required. *See Chacon v. Wood,* 36 F.3d 1459, 1465–66 (9th Cir.1994) ("In *Tamayo–Reyes,* the Supreme Court overruled *Townsend* in part. Specifically, it held that a hearing is not mandatory under *Townsend's* *fifth* circumstance ... unless the petitioner can show cause for failing to develop the material facts in state court and prejudice resulting therefrom."). Accordingly, we hold that the district court below properly exercised its "power to receive evidence and try the facts anew," given that Seidel "allege[d] facts which, if proved, would entitle him to relief." *Townsend,* 372 U.S. at 312, 83 S.Ct. 745.

Four other circuits have considered this issue and appear to be evenly split in their results. *See Pagan v. Keane,* 984 F.2d 61, 63–65 (2d Cir.1993); *Mitchell v. Rees,* 114 F.3d 571, 577 (6th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1062, 140 L.Ed.2d 122 (1998); *Clemmons v. Delo,* 124 F.3d 944, 951–52 (8th Cir.1997); *Mathis v. Zant,* 975 F.2d 1493 (11th Cir.1992).

Two, the Eleventh and Sixth Circuits, concluded that *Tamayo–Reyes* is not exclusively applicable to the determination of when district courts are *required* to hold hearings in the context of habeas corpus proceedings, but also imposes affirmative limits on the federal courts' ability to hold evidentiary hearings at their discretion. *See Mitchell,* 114 F.3d at 577 (holding that "a district court abuses its discretion by ordering [an evidentiary] hearing without first requiring the petitioner to make the requisite showing [of cause and prejudice]"); *Mathis,* 975 F.2d at

1496–97 (reversing on the ground that the district court failed to require the petitioner to demonstrate cause and prejudice before it *sua sponte* ordered an evidentiary hearing).

The other two circuits, the Second and the Eighth, reached the opposite conclusion, reasoning that *Tamayo–Reyes* does not affect the discretion of the federal courts to hold evidentiary hearings. *See Pagan,* 984 F.2d at 64 ("*Townsend* also made clear that a District Court retained the power to hold a hearing even though one was not required.... This aspect of *Townsend* remains the law."); *Clemmons,* 124 F.3d at 952 (emphasizing that *Tamayo–Reyes* "addresses only the circumstances under which an evidentiary hearing is *required* ") (emphasis in original).

For the reasons stated above, we are convinced that the position adopted by the Second and Eighth Circuits is most consistent with Supreme Court precedent.[1]

## II. *Ineffective Assistance*

The State argues that even if the district court properly held an evidentiary hearing on Seidel's claim of ineffective assistance of counsel, the district court erred in granting Seidel habeas relief.

■ In deciding whether Seidel was deprived of his Sixth Amendment right to counsel, we apply the two-tier test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). According to *Strickland,* Seidel must demonstrate (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id.* at 687, 104 S.Ct. 2052; *see also Dyer v. Calderon,* 122 F.3d 720, 732 (9th Cir.1997).

### A. *Performance*

■ In reviewing the performance of Seidel's trial attorney, the ultimate question is whether counsel's "representation fell below an objective standard of reasonableness."

*Bonin v. Calderon,* 59 F.3d 815, 833 (9th Cir.1995) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Bearing in mind that "[j]udicial scrutiny of counsel's performance must be highly deferential," *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052, we nevertheless hold that counsel's conduct in this case fell outside the wide range of professionally competent assistance, *see id.* at 690, 104 S.Ct. 2052.

■ In general, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. In the instant case, there were abundant signs in the record that Seidel suffered from mental illness. Nevertheless, trial counsel failed to conduct any investigation at all into his client's psychiatric history and therefore neglected to pursue a potentially successful defense. *See Sanders v. Ratelle,* 21 F.3d 1446, 1456 (9th Cir.1994) ("[C]ounsel must, at a minimum, *conduct a reasonable investigation* enabling him to make informed decisions about how best to represent his client."); *Evans v. Lewis,* 855 F.2d 631, 637 (9th Cir.1988) ("[C]ounsel's failure to pursue the possibility of establishing [his client's] mental instability constituted deficient performance.").

■ It was clear from the evidence available to counsel at the time of trial that Seidel has an extensive history of mental problems. The pre-trial record included the following factual items: (1) Seidel had been treated with medication by a prison psychiatrist while awaiting trial; (2) Seidel's jail medical record indicated that he had been treated at a V.A. hospital for a mental disorder; and (3) Seidel's Own Recognizance Report, prepared for his bail hearing, documented prior hospitalization at a V.A. hospital for symptoms related to his mental condition.

In addition to the evidence in the pre-trial record that should have alerted trial counsel to the possibility of using Seidel's mental illness as a defense, there is also evidence in

---

1. Because we conclude that the district court acted within its discretion in ordering an evidentiary hearing, we do not consider whether Seidel would have been entitled to relief even in the absence of the additional evidence adduced during the federal hearing. In this respect, we note that a substantial amount of evidence was presented to the state court, including Dr. Koller's psychiatric report.

the record that counsel actually was aware of the mental problems that his client suffered. Seidel testified at the federal evidentiary hearing that he had informed counsel about the symptoms related to his mental condition. *See Strickland,* 466 U.S. at 691, 104 S.Ct. 2052 ("[I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions...."). Counsel's own handwritten notes corroborate Seidel's testimony: Notes from a client interview with Seidel on July 23, 1990, less than two months after the murder, indicate that Seidel told counsel that he walked away from Bucholz after mortally wounding him because he was taking medication from the V.A. hospital and experiences "anger fits and black[ ] out[s]." In addition, as evidenced by counsel's own notes, counsel had been informed that the prison mental health department was arranging to obtain medication for Seidel while he remained in custody. In spite of these telltale signs that counsel knew of his client's psychiatric troubles, counsel stated in a letter dated five months after Seidel's conviction that "the evidence [did not] suggest that [Seidel] had any mental problems."

Although trial counsel had both actual and constructive notice of Seidel's mental status, he conducted no investigation to ascertain the extent or possible ramifications of his client's psychiatric impairment. Counsel did not obtain Seidel's military, prison, or medical records, which obviously would have provided a full account of his mental health history. He failed to interview any witnesses regarding Seidel's mental state. Counsel never requested that any mental or psychiatric evaluations be performed on his client to assess his condition. In sum, counsel failed to conduct any research at all into the possibility of presenting a defense related to his client's obviously impaired mental state. Counsel's disregard for conspicuous pieces of evidence that pointed to a potentially fruitful trial strategy cannot be described as anything short of defective representation.

Our conclusion that counsel was ineffective for purposes of *Strickland* is not affected by the possibility that Seidel misrepresented the source of his illness or exaggerated its effects in conversations with post-conviction counsel. There is no evidence that trial counsel was misled and there is thus no merit to the State's argument that trial counsel's decision not to pursue mental illness as a defense was a strategic one based on Seidel's apparently untrustworthy accounts of his condition. The fact remains that counsel had ample notice of Seidel's condition from objective sources, yet failed to conduct even a minimal investigation in order to make an informed decision regarding the possibility of a defense based on Seidel's mental illness. *See Sanders v. Ratelle,* 21 F.3d 1446, 1456 (9th Cir.1994) (holding that an attorney's choice to eliminate a certain defense cannot be viewed as "strategic" where counsel "failed to conduct even the minimal investigation that would have enabled him to come to an informed decision"); *Evans v. Lewis,* 855 F.2d 631, 637 (9th Cir.1988) (holding that counsel's failure to investigate client's mental condition "cannot be construed as a trial tactic").

Second, the State argues that Seidel's taped confession to the police made self-defense the only feasible direction of argument. We disagree. While the police statement, indicating that Seidel was "scared for [his] life" at the time of the incident and only attacked the victim after receiving a punch to the head, is consistent with a theory of self-defense, there is nothing in the statement that precluded a second defense based on Seidel's psychiatric problems. The State has been unable to explain why self-defense and a defense based on mental illness were mutually exclusive under the existing circumstances. Indeed, the two defenses were quite likely to be complementary: Seidel's fear for his own safety during the fight with Bucholz could have been exacerbated by his psychological history of multiple trauma. As Dr. Paul Koller, the expert psychologist appointed by the state trial court to examine Seidel, explained:

> Typically, such a combination of multiple traumas tends to leave victims excessively fearful and psychologically primed to overreact to perceived threats ... It is thus quite possible that the combination of situational factors, Mr. Seidel's PTSD, and his organic brain damage helped create an excessive fear for his well-being and subse-

quent impulsive, poorly thought out over-reaction with the knife.

Dr. Koller's report simply confirms that trial counsel's "strategic" decision to rely exclusively on a theory of self-defense could not have been the product of reasonable professional judgment.

## B. *Prejudice*

 Trial counsel's deficient performance alone "does not warrant setting aside the judgment ... if the error had no effect on the judgment." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052. In order to establish prejudice, Seidel "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* There is little question in our minds that it is reasonably probable that the outcome of Seidel's trial would have been different had counsel conducted a minimal investigation into Seidel's apparent psychiatric impairment.

The jury in this case found that Seidel's use of a knife constituted an intentional act that supplied the element of malice necessary to convict a defendant of second-degree murder under California law. There is a reasonable probability that if a defense of mental illness had been presented, the jury would not have found the existence of malice. *See People v. Swain,* 12 Cal.4th 593, 49 Cal. Rptr.2d 390, 909 P.2d 994, 1001 (1996) ("[M]alice [can] be rebutted by a showing that defendant's mental capacity was reduced by mental illness [or] mental defect ...." ) (internal quotations and citations omitted). As the district court below found, "A defense of imperfect self-defense based on the facts of the case, coupled with petitioner's mental state at the time of the fight, the PTSD symptoms, and the organic brain damage would have eliminated the element of malice." We agree with the district court that if counsel had introduced Dr. Koller's evaluation at trial, which documented both "clear symptoms of PTSD" and "chronic brain damage," along with other evidence in the record of Seidel's mental illness, the jury in all likelihood would have returned a verdict of manslaughter instead of murder. *Compare* Cal.Penal Code § 187(a) ("Murder is the unlawful killing of a human being, or a fetus, with malice aforethought."), *with* Cal.Penal Code § 192 ("Manslaughter is the unlawful killing of a human being without malice."). It is particularly curious that counsel requested and received jury instructions for both voluntary and involuntary manslaughter, but failed to present any evidence or argument to support a manslaughter finding. Although trial counsel relied exclusively on a theory of self-defense, Seidel never testified and there was no other evidence presented that was relevant to Seidel's mental state. Accordingly, evidence demonstrating Seidel's mental condition would have played a significant role in establishing the requisite fear for purposes of self-defense.

The State challenges the existence of a reasonable probability that a mental illness defense would have succeeded at trial. The State again focuses on Seidel's supposed lies concerning, *inter alia,* his POW status. The State insists that at trial, the prosecution "would have vigorously cross-examined Seidel's psychologist over Seidel's many misrepresentations and would have uncovered his false assertion of POW status." The State's argument is without merit. There is simply no indication that Dr. Koller's diagnosis was influenced by any of the alleged exaggerations. Dr. Koller's report contains no mention of POW status, and in it he expressly recognized that Seidel had "lost much credibility as an historian and witness" as result of his "lies or omissions," which may have been attributable to his "chronic brain damage." Because Dr. Koller's assessment seems to have been informed by a realistic understanding of Seidel's personality and history, it is doubtful that Dr. Koller's professional opinion would have been severely undermined on cross-examination. We therefore cannot agree with the State's contention that a mental illness defense would have been a wasted effort.

In view of trial counsel's constitutionally ineffective performance and the high likelihood that it had a prejudicial effect on the defense, our confidence in the outcome of Seidel's trial is considerably undermined.

758

### CONCLUSION

For the reasons stated above, we AFFIRM the district court's order granting Seidel's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.