Joe Leonard LAMBRIGHT,
Petitioner–Appellant,

v.

Terry STEWART, Director, Arizona
Department of Corrections,
Respondent–Appellee.

No. 96–99020.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 17, 2000

Filed March 6, 2001

David P. Tiers, Tucson, Arizona, for the petitioner-appellant.

Scott A. Bales, Solicitor General, Phoenix, Arizona, for the respondent-appellee.

Before: FERGUSON, REINHARDT, and DAVID R. THOMPSON, Circuit Judges.

FERGUSON, Circuit Judge:

Joe Leonard Lambright ("Lambright") appeals the district court's procedural dismissal of his ineffective assistance of counsel claim. We conclude that the district court incorrectly found that the state court's order dismissing Lambright's claim rested on an independent and adequate state ground. Because he has presented a colorable claim to relief and has not received a hearing, we order an evidentiary hearing in the district court.

## I.

On March 30, 1982, Lambright and co-defendant Robert Douglas Smith were convicted of first degree murder, sexual assault, and kidnapping.[1] Lambright's former girlfriend and accomplice, Kathy Foreman ("Foreman"), agreed to testify as the State's main witness pursuant to an immunity agreement. The State sought the death penalty.

The mitigation that Lambright's lawyer offered at sentencing comprises less than three pages of a double-spaced transcript. Although there were signs at the time that Lambright suffered from a mental illness, his counsel failed to present any mitigating psychiatric testimony. Instead, the attorney promised the court that he had "one witness who will be very brief." He then called a correction officer from the Pima County Jail, who had known Lambright for just six months. The officer testified that he personally had no "problems with him as an inmate" and knew of no "complaints made by other inmates." When

---

1. Because we described the facts of the offense in detail in our en banc opinion, we do not repeat them. *See Lambright v. Stewart,* 191 F.3d 1181, 1182–83 (9th Cir.1999) (en banc).

the lawyer finished questioning the detention officer, he turned to the court and announced, "[y]our Honor, we have nothing more to put forward at this time. Thank you."

In his closing argument, Lambright's lawyer offered two reasons for sparing his client from execution. First, in the lawyer's words, Foreman "was a co-defendant and co-conspirator in everything but the charge made by the county attorney. I think it's a circumstances [sic] this Court has to consider." Second, as the lawyer explained, "I submit there is a prior forgery or some such crime in Louisiana sometime ago. The record presented shows a man, but for this instance, with no violent background."

On the day of sentencing, the court offered Lambright's lawyer another opportunity to argue on his client's behalf. The lawyer responded, "I made the argument at the mitigation hearing held prior to this date. Thank-you." The court then sentenced Lambright to death after finding the existence of a single aggravating factor: that the murder had been committed in an especially heinous, cruel, or depraved manner.

## II.

Lambright raised an ineffective assistance of counsel claim in his first petition for postconviction relief. The district court held that he had procedurally defaulted the claim under Arizona Rule of Criminal Procedure 32.2 ("Rule 32.2") by failing to raise it on direct appeal. We conclude that the rule requiring Lambright to raise his ineffective assistance of counsel claim on appeal does not bar federal habeas review because it was "so unclear that it d[id] not provide the habeas petitioner with a fair opportunity to seek relief in state court." *Morales v. Calderon*, 85 F.3d 1387, 1390 (9th Cir.1996) (internal quotation marks omitted).

"In order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be *clear*, consistently applied, and *well-established* at the time of petitioner's purported default." *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir.1994) (emphasis added); *see also Ford v. Georgia*, 498 U.S. 411, 423–24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). No Arizona case at the time of Lambright's purported default required the defendant to raise an ineffective assistance of counsel claim on appeal.

The State relies on *State v. Zuck*, 134 Ariz. 509, 658 P.2d 162 (1982), to support its contention that such a rule existed, but its reliance is misplaced.[2] In *Zuck*, the appellant raised an ineffectiveness claim on appeal and the Arizona Supreme Court remanded for a hearing on the issue. *Id.* at 168. In so doing, the court remarked that, "*when the issue* of competency of trial counsel *has been raised*, we have always resolved the matter with whatever was before us in the record and without giving trial counsel an opportunity to be heard. However, we believe that in some cases *where this issue is raised*, it would be appropriate to remand the case for a hearing on the question." *Id.* (emphasis added). The court's description of its approach to cases in which appellants *did* raise an ineffective assistance of counsel claim on appeal falls far short of a clear rule requiring all appellants to do so. Thus, contrary to the State's assertion, *Zuck* does not contain a clear rule requiring ineffectiveness claims to be raised on appeal.

Significantly, the Arizona Supreme Court has since clarified that "[a]s a general rule, ineffective assistance of counsel claims should be raised in post-conviction relief proceedings pursuant to rule 32, Arizona Rules of Criminal Procedure." *State*

---

2. The State also relies on cases that the Arizona Supreme Court decided after Lambright's appeal. Obviously, these cases are not relevant in determining whether the rule the State claims existed was sufficiently clear or well-established at the time of Lambright's alleged default to bar federal review.

*v. Atwood,* 171 Ariz. 576, 832 P.2d 593, 616 (1992); *see also Krone v. State,* 181 Ariz. 364, 890 P.2d 1149, 1151 (1995) ("We continue to commend the Rule 32 process to resolve claims of ineffective assistance of counsel."); *State v. Carver,* 160 Ariz. 167, 771 P.2d 1382, 1390 (1989). In *State v. Valdez,* 160 Ariz. 9, 770 P.2d 313, 318 (1989), for example, the Arizona Supreme Court explained that, "if the defendant wishes to raise an ineffective assistance of counsel issue, he should ordinarily begin someplace other than in this court." It so held because "this court is reluctant to decide claims of ineffective assistance in advance of an evidentiary hearing to determine the reasons for counsel's actions or inactions on any particular point." *Id.*

To prove that Lambright defaulted his Sixth Amendment claim by failing to raise it on appeal, the State alternatively relies on Rule 32.2's general procedural default rule.[3] At the time of Lambright's alleged default, Rule 32.2 provided that "any ground" "[k]nowingly, voluntarily and intelligently not raised at trial, on appeal, or in any previous collateral proceeding" could be considered waived. It was well-established, however, that an appellant could not raise any issue outside of the trial record. *See State v. Pearson,* 98 Ariz. 133, 402 P.2d 557, 559 (1965) (refusing to consider affidavit in support of claim "being of the view that they are not properly raised in this Court"); *State v. Lindsay,* 5 Ariz.App. 516, 428 P.2d 691 (Ct.App.1967) ("The record before this Court is very meager, and it has been stated repeatedly that the appellate court will consider and review only those matters which appear in the record before it and will not consider those matters not properly supported by the record.") (citations omitted). As one Arizona court explained:

Rule 32 has as its aim the establishment of proceedings to determine the facts underlying a defendant's claim for relief when such facts are not otherwise available. . . . When Rule 32.2 is viewed with this aim in mind, we are of the opinion that the preclusion of post-conviction relief under this rule on the ground that the matter is still raisable on direct appeal applies only to those matters in which a sufficient factual basis exists in the record for the appellate court to resolve the matter.

*State v. Bell,* 23 Ariz.App. 169, 531 P.2d 545 (Ct.App.1975). Indeed, in *State v. Scrivner,* 132 Ariz. 52, 643 P.2d 1022, 1024 (Ct.App.1982), the court specifically distinguished between · ineffective assistance claims "based on the record," which were subject to waiver on appeal, and those that had an "apparent necessity for the development of these matters by further factual hearings."

In his first Rule 32 petition, Lambright alleged that his attorney failed to investigate or present evidence of his mental disability and social history. Of course, neither the evidence of counsel's deficiencies nor of the prejudice caused therefrom appeared in the trial record. Since Lambright's ineffective assistance of counsel claim required factual development, Rule 32.2 did not clearly require that he raise it on appeal. In fact, Arizona's procedural rules required that he wait until state post-conviction proceedings to raise it. Thus, the procedural default in this case is inadequate to bar federal review. *See McGregor v. Gibson,* 219 F.3d 1245, 1252–53 (10th Cir.2000) (concluding that state procedural bar, based on petitioner's failure to raise ineffectiveness claim on direct appeal, was inadequate to preclude federal

---

3. In *Poland v. Stewart,* 169 F.3d 573, 579 (9th Cir.1999), and *Carriger v. Lewis,* 971 F.2d 329 (9th Cir.1992) (en banc), we rejected both the contention that the state court orders, finding that the petitioners had defaulted their claims of ineffective assistance of counsel on appeal, constituted a decision on the merits and the broad assertion that all of Arizona's default rules are inconsistently applied. We were not, however, faced with the same challenge we confront here: that the particular procedural default rule the state court relied on was insufficiently clear, in light of the rule prohibiting claims that relied on evidence outside the record from being raised on appeal, to bar federal review. Therefore, *Poland* and *Carriger* do not control.

habeas review because "that information would have been outside the trial record").[4]

[ ] Moreover, even if such a procedural rule clearly existed at the time of Lambright's direct appeal, the state court's order in this case does not "clearly and expressly" rest on such a rule. Thus, the Arizona court did not rely on an independent state ground so as to bar federal habeas review. The district court incorrectly based its conclusion that it could not consider Lambright's constitutional claim on the state court's first, rather than last, reasoned opinion on Lambright's ineffective assistance of counsel claim. To determine whether a state procedural ruling bars federal review, we look to the "last reasoned opinion on the claim." *Ylst v. Nunnemaker*, 501 U.S. 797, 804, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). We do so because, "[s]tate procedural bars are not immortal ...; they may expire because of later actions by state courts." *Id.* at 801, 111 S.Ct. 2590.

The last reasoned opinion on Lambright's Sixth Amendment claim is the state trial court's order denying rehearing on his first state post-conviction petition. In the order, the court wrote:

> Ineffective assistance of counsel.
> Paragraph a—this issue existed factually prior to appeal; the Arizona Supreme Court looked at the entire sentencing process exhaustively, testing it for error of constitutional dimensions and found none. There is therefore the suggestion, and strong inference, that this claim is precluded under Rule 32.2(a)(2); however, it [sic] not, the Court finds that

since it clearly could have been raised on direct appeal, that it has been knowingly, voluntarily and intelligently waived by failure to raise it, and is therefore precluded pursuant to Rule 32(a)(c) and (c).

By stating that there was a "strong inference" that the claim was "precluded" under Rule 32.2(a)(2), the state court indicated that it believed that the Arizona Supreme Court had already rejected it on the merits, which prevented Lambright from further litigating the claim.[5] In the next part of the order, however, the court suggested a contradictory possibility: that Lambright had failed to raise the claim before and had therefore waived it under Rule 32.2(a)(3).

The last reasoned opinion on Lambright's ineffective assistance of counsel did not clearly invoke a procedural default rule and therefore does not bar federal review. It is well established that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308. Indeed, "a procedural default based on an ambiguous order that does not clearly rest on an independent and adequate state ground is not sufficient to preclude federal collateral review." *Morales v. Calderon*, 85 F.3d at 1392.

In *Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir.1996), we held that a state court's finding that was virtually indistinguishable

---

4. Because the rule that the district court applied in this case was insufficiently clear to bar federal review, we need not determine whether a state procedural rule requiring a habeas petitioner to raise an ineffectiveness claim on appeal, which at the same time precludes him from referring to evidence outside of the record to make the necessary showing under *Strickland*, violates the Due Process Clause.

5. As quoted above, Arizona's waiver or procedural default rule is set forth in Rule

32.2(a)(3), which provides that, "[a] petitioner will not be given relief under this rule based upon any ground: ... (3) knowingly, voluntarily, and intelligently not raised at trial, on appeal, or in any previous collateral proceeding." By contrast, Rule 32.2(a)(2) sets forth Arizona's preclusion doctrine by providing that "[a] defendant shall be precluded from relief under this rule based upon any ground" "[f]inally adjudicated *on the merits* on appeal or in any previous collateral proceeding." Ariz. R.Crim. Pro. 32.2(a)(2) (emphasis added).

from the one in this case did not bar federal habeas review. There, the state court rejected Ceja's second post-conviction petition "for the reasons stated in [the State's] Response to Petitioner's Petition." In the response, the State had argued that, "all of petitioner's grounds are precluded because petitioner either knowingly, intelligently and voluntarily withheld them on direct appeal or his previous Rule 32 proceeding, or they have been previously determined against petitioner's position on the merits." *Id.* We concluded that a finding of both waiver, based on a petitioner's failure to comply with procedural rules, and preclusion, based on a court's belief that the state courts had already adjudicated and rejected the claim, was "inconsistent." *Id.* In ruling that such an inconsistent order did not bar federal review of Ceja's dismissed claims, we explained, "[p]reclusion does not provide a basis for federal courts to apply a procedural bar. By adopting Arizona's mixed arguments of preclusion and waiver with respect to these claims, the state court in Ceja's second Rule 32 proceeding did not clearly base its decision on independent and adequate state grounds." *Id.* (citations omitted).

The order in this case similarly does not bar federal review. Like the order in *Ceja,* the state court's ruling in Lambright's case contains mixed and inconsistent findings of preclusion and waiver. By invoking two contradictory arguments, the state court failed to make a clear finding of procedural default and federal review is not barred.

Because the state court in this case did not clearly and expressly invoke a procedural bar as the basis of its ruling, the State's reliance on *Poland v. Stewart,* 169 F.3d 573 (9th Cir.1999), is misplaced. In *Poland,* the state court dismissed the petitioner's constitutional claims on procedural grounds without explanation. *Id.* at 579.

Faced with the unexplained state court order, we looked to the prior proceeding to determine whether it was based on procedural default. *Id.*[6] In doing so, we specifically contrasted the order in *Poland,* which was unexplained, with the order in *Ceja,* which by including "mixed arguments of preclusion and waiver with respect to these claims ... did not clearly base its decision on independent and adequate state law grounds." *Id.* at 579 n. 10 (quoting *Ceja,* 97 F.3d at 1253). Because the order in this case also included "mixed arguments of preclusion and waiver with respect to [Lambright's ineffectiveness] claim," it does not bar federal habeas review.

### III.

Lambright asserts that he is entitled to an evidentiary hearing because he has raised a colorable claim of ineffective assistance of counsel and no state court has ever granted him an opportunity to develop his claim. We agree and therefore remand to the district court. *See Siripongs v. Calderon,* 35 F.3d 1308, 1310 (9th Cir.1994).

To ultimately prevail on his ineffective assistance of counsel claim, Lambright must show that his counsel's performance was deficient, and that the deficient performance prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1514–15, 146 L.Ed.2d 389 (2000). Defense counsel have a general "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691, 104 S.Ct. 2052.

Lambright argues that an extensive series of "red flags" should have motivated counsel to investigate his psychiatric condi-

---

6. Our examination of the earlier state court order was consistent with the Supreme Court's instruction in *Ylst,* 501 U.S. at 803, 111 S.Ct. 2590, that "where, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."

tion and to present mitigating psychiatric testimony at sentencing. Lambright's presentence Psychological Evaluation told of his service in Vietnam, during which he witnessed the violent death of friends, and the mental breakdown that he suffered after returning to this country. It described some of the hallucinations he had experienced and his subsequent need for hospitalization in a mental facility. The report also mentioned two of Lambright's attempts to commit suicide. In an affidavit before the district court, moreover, Lambright wrote that he had "discussed his past mental problems and drug use with his trial counsel." There can be no doubt that Lambright has raised a colorable claim of deficient performance. Counsel's alleged failure to obtain a psychiatric evaluation of Lambright, despite knowing of his wartime experience and extensive drug abuse, is the type of performance courts have labeled deficient under *Strickland*. *See Williams*, 120 S.Ct. at 1514 (holding that the failure to "conduct an investigation that would have uncovered extensive records graphically describing [the petitioner's] nightmarish childhood" constituted deficient performance); *Turner v. Duncan*, 158 F.3d 449, 456 (9th Cir.1998) ("[Counsel's] failure to arrange a psychiatric examination or utilize available psychiatric information also falls below acceptable performance standards."); *Seidel v. Merkle*, 146 F.3d 750, 755 (9th Cir.1998) (holding that counsel was ineffective in failing to conduct any investigation into his client's psychiatric history despite evidence that the petitioner had been treated with medication while awaiting trial, that he had been treated in a V.A. Psychiatric Hospital, and that he suffered from a mental illness, namely Post Traumatic Stress Disorder), *cert. denied*, 525 U.S. 1093, 119 S.Ct. 850, 142 L.Ed.2d 704 (1999).

We have also held that the failure to interview family members, in light of indications of a mental disorder, constitutes deficient performance. *See Seidel*, 146 F.3d at 750. In this case, had counsel interviewed Lambright's sister, he would have learned that Lambright began to display signs of a mental disorder as soon as he returned from Vietnam. In an affidavit before the district court, she described her brother's behavior as "kind, gentle and well-behaved" before serving in Vietnam, after which "his behavior and manner were greatly changed. He appeared extremely tense paranoid and nervous. He began using drugs and alcohol during this period." She also wrote that, after deliberately smashing his car into a tree, he told her that "he was so mad and mixed up, suicide seemed like the best way out." On another occasion, Lambright showed up at her house in the middle of the night and banged on her screen door. When she got up to see who it was, she saw her brother cowering against a wall, hiding. He was crying and muttering incoherently. Then, he said, "I gotta get to 'em. I see 'em, they're burning, Mom and Daddy, they're burning."

Psychiatric evaluations of Lambright after the court imposed the death penalty indicates the seriousness of his trial counsel's alleged failure to conduct reasonable investigations. Before the district court, Lambright introduced the affidavit of Dr. Donald Stonefeld, a medical doctor specializing in psychiatry with a sub-specialty in neurology and post traumatic stress disorder. After reviewing Lambright's history, Dr. Stonefeld concluded that "an emotional illness did exist at the time of the offense," and that the documents he reviewed "indicate post-traumatic stress disorder and a probable disorder due to excessive drug use." He also recommended "[t]hat a full mental examination of Mr. Lambright is necessary and warranted in order to determine his mental condition at the time of the offense." In addition, Lambright introduced the affidavit of a pharmacologist, Martha Fankhauser, who concluded that "chronic amphetamine use such as is reported by Mr. Lambright may cause long-term psychiatric changes including anxiety reactions [and] psychosis." Like Dr. Stonefeld, she recommended that "a psychiatric evaluation of Mr. Lambright is desirable and necessary in order to determine if

there is an underlying psychiatric disorder which may have been brought on by the ingestion of these substances." Lambright has presented more than enough evidence to establish a colorable claim of deficient performance.

We have no doubt that Lambright also has a colorable claim of prejudice under *Strickland.* Lambright's lawyer presented no psychiatric evidence or argument at the sentencing hearing. The evidence Lambright has presented, without the benefit of a hearing, shows that his lawyer could have presented extensive mitigating evidence at sentencing. Instead, Lambright's counsel stated meekly, "I have one witness who will be very brief." The witness was a correction officer who testified as to Lambright's conduct during a six-month period while he awaited trial. We have previously found that the prejudice requirement is met where "defense counsel effectively presented no mitigating evidence at sentencing, despite the presence of aggravating factors." *Smith,* 189 F.3d 1004, 1013 (9th Cir.1999), *cert. denied,* —— U.S. ——, 121 S.Ct. 358, 148 L.Ed.2d 288, 2000 WL 1056515 (2000). Prejudice is especially likely where, as here, "this is not a case in which a death sentence was inevitable because of the enormity of the aggravating circumstances." *Bean,* 163 F.3d at 1081. In fact, in this case the State argued that only one aggravating factor existed. Although the offense in this case certainly was brutal and sadistic, the Supreme Court in *Williams* recently noted that "[m]itigating evidence unrelated to dangerousness may alter the jury's selection of penalty, even if it does not undermine or rebut the prosecution's death-eligibility case." *Williams,* 120 S.Ct. at 1516; *see also Correll v. Stewart,* 137 F.3d 1404, 1413 ("[B]ecause trial counsel failed to present any evidence of Correll's purported mental illness which may have satisfied Ariz.Rev.Stat. § 13–703(E), Correll has 'undermined confidence in the outcome' of the sentencing, thereby establishing the requisite Strickland prejudice."). Evidence of mental disabilities or a tragic childhood can affect a sentencing determi-

nation even in the most savage case. We are compelled to order an evidentiary hearing so that the district court can determine both the quality of Lambright's counsel's performance and its effect on the decision to sentence him to death.

## IV.

We reverse the judgment of the district court and remand for an evidentiary hearing. We remand for the district court to determine whether Lambright was denied effective assistance of counsel at sentencing because of the failure to investigate and present evidence of his psychiatric condition and social history.

Concurrently herewith we file a memorandum disposition in which we affirm the petitioner's conviction and the district court's ruling that the especially heinous, atrocious, and cruel aggravating factor applies in this case for the reasons stated therein. Accordingly, the judgment below is

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED for further proceedings consistent with this opinion.