**PUBLISHED**

Filed: October 4, 2006

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

GEORGE CALE BUCKNER,
*Petitioner-Appellant,*

v.

MARVIN POLK, Warden, Central
Prison, Raleigh, North Carolina,
*Respondent-Appellee.*

No. 05-14

---

## ORDER

Appellant filed a petition for rehearing and rehearing en banc.

Judge Shedd and Judge Duncan voted to deny panel rehearing. Judge Gregory voted to grant panel rehearing.

A member of the Court requested a poll on the petition for rehearing en banc. A majority of the judges in active service voted to deny rehearing en banc. Chief Judge Wilkins and Judges Widener, Wilkinson, Niemeyer, Williams, Michael, Motz, Traxler, King, Shedd, and Duncan voted to deny rehearing en banc. Judge Gregory voted to grant rehearing en banc.

The Court denies the petition for rehearing and rehearing en banc.

Judge Duncan wrote an opinion concurring in the denial of rehearing en banc. Judge Gregory wrote a dissenting opinion.

Entered at the direction of Judge Duncan for the Court.

For the Court

/s/ Patricia S. Connor
Clerk

DUNCAN, Circuit Judge, concurring in the denial of rehearing en banc:

The reasons underlying the panel majority opinion on the merits are set forth in detail at *Buckner v. Polk*, 453 F.3d 195 (4th Cir. 2006). I write here briefly only to clarify the facts presented on this appeal, and to set forth, as the dissent does not, both the issue before us and the standard of review that mandates the denial of the petition for rehearing en banc.

The dissent's characterization to the contrary, the majority's opinion in this case does not even implicate, let alone "heighten," "a defendant's burden to establish a violation of his Sixth Amendment right to counsel." *See infra* dissent at 4. The majority opinion simply applies the stringent standard of review imposed by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254 (2000), to conclude, as, indeed it must, that the state MAR court's factual findings underlying its decision that Buckner's counsel was not ineffective are not clearly erroneous. Even if they were, analysis under AEDPA further dictates that Buckner's newly proffered evidence is so cumulative of that which his counsel did offer at sentencing that the failure to present it could not constitute prejudice.

Significantly, in deciding whether Buckner has demonstrated the deficiency of the state court adjudication, we must presume the state court's factual findings to be correct absent clear and convincing evidence to the contrary. § 2254(e)(1). For that reason, we do *not* "now know," as the dissent would have it, that Buckner's dysfunctional childhood caused personality abnormalities, because the state court expressly found the new expert testimony on which the dissent seeks to rely to be "not credible." [J.A. 453]. Moreover, although the dissent contests the reasonableness of trial counsel's performance, the state court made extensive findings of fact to the effect that trial counsel met with individuals at the North Carolina Center for Death Penalty Litigation, hired a psychologist to interview Buckner, obtained a pre-

trial psychological evaluation, and secured the appointment of an investigator to assist in obtaining mitigation evidence—all in the face of repeated refusals by Buckner (and members of his family) to co-operate, and Buckner's insistence that no events in his childhood affected him in any way. Although the dissent ignores these facts and appears to disagree with them, it does not even attempt to refute them by clear and convincing evidence.

Even if we were free to disregard the state court's factual findings underlying its assessment of the reasonableness of counsel's perfor-mance, as the dissent would have us do, the dissent further fails to rebut the state court's conclusion regarding the absence of prejudice. In determining that trial counsel's performance did not prejudice Buckner, the state court pointed to the mitigation evidence portraying Buckner as the product of a troubled home, whose father had a history of alcohol abuse and whose brother died in a house fire when he was young. Indeed, the very fact on which the dissent relies so heavily— the jury's notations regarding the death of Buckner's brother in a fire and lack of parental involvement as mitigating factors—reinforces the extent to which trial counsel made it aware of those unfortunate aspects of Buckner's life. As discussed in the panel majority opinion, this court has consistently upheld as not unreasonable state court find-ings of no prejudice from counsel's failure to introduce evidence adding only minimal detail or support to mitigating factors counsel already presented to the jury. *Buckner*, 452 F.3d at 206 (citing *McHone v. Polk*, 392 F.3d 691, 709-10 (4th Cir. 2004)).

In the face of evidence of guilt characterized by the state court as "overwhelming," [J.A. 454] and a finding of first degree murder under alternate theories of felony murder, lying in wait, and premeditation and deliberation, the dissent proffers nothing more than pure specula-tion to support its assertion that the newly minted affidavits (two of which contain sections copied verbatim from one another) would have tipped the scales of a juror's consideration. Given the AEDPA standard of review, the failure of Buckner and the dissent to rebut the state court's adverse credibility finding and the substantive weakness and cumulative nature of the new evidence, this court's denial of the motion for reconsideration is not only appropriate, but compelled.

GREGORY, Circuit Judge, dissenting from the denial of rehearing en banc:

I dissent from the Court's denial of rehearing en banc. This case presents an exceptionally important issue regarding a defense attorney's constitutional obligations under the Sixth Amendment to investigate his client's mental health in the course of preparing for a capital murder prosecution. Although much of my reasoning is set forth in my dissent from the majority's opinion, *Buckner v. Polk*, 453 F.3d 195, at 208-225 (4th Cir. 2006), I write again to emphasize the disturbing degree to which the majority heightens a defendant's burden to establish a violation of his Sixth Amendment right to counsel.

I.

In this case, counsel were well aware of two blatantly traumatic circumstances in George Cale Buckner's childhood: his father's alcoholism, and the fire that killed his younger brother and severely disfigured his father right before his eyes. Despite learning of these facts early in their preparations for trial, counsel drastically underestimated the importance of preparing for the sentencing phase and did not know that they could present psychological mitigation evidence at the sentencing phase. When they began their preparations for the sentencing phase during the one month before trial, counsel did not procure an expert opinion regarding the psychological effects of Buckner's father's alcoholism or the fire. As the majority acknowledges, Buckner's lead counsel for the sentencing phase of the trial "turned his attention to preparing mitigation evidence during the guilt phase of the trial, *only one week before the sentencing phase began*." (emphasis added) *Buckner*, 453 F.3d at 201.

Following Buckner's conviction, counsel hastily culled together some limited facts concerning Buckner's father's alcoholism and the fire. However, they failed to develop the psychological effects of these circumstances in any meaningful way at the sentencing hearing. In fact, the prosecution aptly exploited counsel's ineptitude by pointing out that they had never established any negative effects arising from these circumstances. Moreover, the prosecution itself acknowledged the traumatic nature of the fire, but asserted that counsel did

not identify the fire as a mitigating factor. Tellingly, counsel did not and could not respond to these arguments.

Although the jury ultimately recommended death, the jury adopted the fact that Buckner had grown up with an alcoholic father as a mitigating factor, and penciled in three additional mitigating factors in the catchall mitigation provision on the Issues and Recommendation Form:

    A.   Brother died in fire.

    B.   Two people involved in the murder.

    C.   Lack of parental involvement.

J.A. 302.

## II.

To establish ineffective assistance of counsel under the Sixth Amendment, Buckner must show that (1) counsel's performance was "deficient"; and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Specifically, the second prong of *Strickland* requires Buckner to demonstrate "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (quoting *Strickland*, 466 U.S. at 694)).

On this record, Buckner has shown a "reasonable probability"—which, as the majority acknowledges, is less than a preponderance of the evidence, *Buckner*, 453 F.3d at 203 — that he would not have been sentenced to death but for counsel's failure to develop and present psychological mitigation evidence. The jurors were obviously interested in Buckner's father's alcoholism and the fire as mitigating factors, but could not properly weigh these circumstances given the utter lack of testimony explaining how they contributed to his crimes. We now know, through the benefit of four expert witnesses in the habeas proceedings, that Buckner's dysfunctional childhood caused

personality abnormalities, an excessively underdeveloped maturity level, and possibly, post-traumatic stress disorder. Given that evidence concerning a defendant's disadvantaged childhood and mental or emotional disturbances has proven, time and again, to be highly compelling mitigation evidence at sentencing, *see Boyde v. California*, 494 U.S. 370, 382 (1990); *Smith v. Mullin*, 379 F.3d 919, 943 (10th Cir. 2004); *Middleton v. Dugger*, 849 F.2d 491, 495 (11th Cir. 1989), the now-available expert evidence easily could have persuaded at least one juror to choose life imprisonment over death.

Finding that Buckner failed to show prejudice stemming from counsel's deficient performance, the majority does not even address the jury's expressed interest in Buckner's father's alcoholism and the fire.* The import of the majority's decision is to raise the standard for showing prejudice beyond a "reasonable probability" to an insurmountable level. Specifically, the majority's decision completely disregards the fact that one juror has the power to change the result in a death penalty prosecution, and that, in this case, at least one juror expressed his or her intent to weigh Buckner's father's alcoholism and the fire as mitigating factors. Given the jury's concerns regarding these circumstances despite the woefully lacking record, there is certainly a "reasonable probability" that Buckner would have been sentenced to life imprisonment but for counsel's deficient performance.

---

*The majority resolves Buckner's Sixth Amendment ineffective assistance of counsel claim by sidestepping the issue of whether counsel's conduct in preparing for the sentencing phase was unreasonable under *Strickland*. This was a wise move, because counsel's conduct was clearly indefensible in view of the 1989 version of the *American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases*, which were in effect at the time Buckner was tried. *See Strickland*, 466 U.S. at 688 (recognizing the guidelines promulgated by the American Bar Association as standards for "determining what is reasonable"). Indeed, other circuits have recognized that a defense attorney must rigorously pursue mental health expert advice upon becoming aware of significant red flags in the defendant's psychological history. *See Hamblin v. Mitchell*, 354 F.3d 482, 492 (6th Cir. 2003); *Jennings v. Woodford*, 290 F.3d 1006, 1013-14 (9th Cir. 2002); *Lambright v. Stewart*, 241 F.3d 1201, 1207 (9th Cir. 2001); *Carter v. Bell*, 218 F.3d 581, 596 (6th Cir. 2000); *Caro v. Calderon*, 165 F.3d 1223, 1228 (9th Cir. 1999).

Under the facts presented in this record, I would conclude that Buckner has satisfied the "reasonable probability" standard articulated in *Strickland*. Accordingly, I dissent from the Court's denial of rehearing en banc.