GREGORY, Circuit Judge,
dissenting from the denial of rehearing en banc:
I dissent from the Court’s denial of rehearing en banc. This case presents an exceptionally important issue regarding a defense attorney’s constitutional obligations under the Sixth Amendment to investigate his client’s mental health in the course of preparing for a capital murder prosecution. Although much of my reasoning is set forth in my dissent from the majority’s opinion, Buckner v. Polk, 453 F.3d 195, at 208-225 (4th Cir.2006), I write again to emphasize the disturbing degree to which the majority heightens a defendant’s burden to establish a violation of his Sixth Amendment right to counsel.
I.
In this case, counsel were well aware of two blatantly traumatic circumstances in George Cale Buckner’s childhood: his father’s alcoholism, and the fire that killed his younger brother and severely disfigured his father right before his eyes. Despite learning of these facts early in their preparations for trial, counsel drastically underestimated the importance of preparing for the sentencing phase and did not know that they could present psychological mitigation evidence at the sentencing phase. When they began their preparations for the sentencing phase during the one month before trial, counsel did not procure an expert opinion regarding the psychological effects of Buckner’s father’s alcoholism or the fire. As the majority acknowledges, Buckner’s lead counsel for the sentencing phase of the trial “turned his attention to preparing mitigation evidence during the guilt phase of the trial, only one week before the sentencing phase began.” (emphasis added) Buckner, 453 F.3d at 201.
Following Buckner’s conviction, counsel hastily culled together some limited facts concerning Buckner’s father’s alcoholism and the fire. However, they failed to develop the psychological effects of these circumstances in any meaningful way at the sentencing hearing. In fact, the prosecution aptly exploited counsel’s ineptitude by pointing out that they had never established any negative effects arising from these circumstances. Moreover, the prosecution itself acknowledged the. traumatic nature of the fire, but asserted that counsel did not identify the fire as a mitigating factor. Tellingly, counsel did not and could not respond to these arguments.
Although the jury ultimately recommended death, the jury adopted the fact that Buckner had grown up with an alcoholic father as a mitigating factor, and penciled in three additional mitigating factors in the catchall mitigation provision on the Issues and Recommendation Form:
A. Brother died in fire.
B. Two people involved in the murder.
*283 C. Lack of parental involvement.
J.A. 302.
II.
To establish. ineffective assistance of counsel under the Sixth Amendment, Buckner must show that (1) counsel’s performance was “deficient”; and (2) “the deficient performance prejudiced the defense.” Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Specifically, the second prong of Strickland requires Buckner to demonstrate “ ‘that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ ” Wiggins v. Smith, 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052)).
On this record, Buckner has shown a “reasonable probability” — which, as the majority acknowledges, is less than a preponderance of the evidence, Buckner, 453 F.3d at 203 — that he would not have been sentenced to death but for counsel’s failure to develop and present psychological mitigation evidence. The jurors were obviously interested in Buckner’s father’s alcoholism and the fire as mitigating factors, but could not properly weigh these circumstances given the utter lack of testimony explaining how they contributed to his crimes. We now know, through the benefit of four expert witnesses in the habeas proceedings, that Buckner’s dysfunctional childhood caused personality abnormalities, an excessively underdeveloped maturity level, and possibly, post-traumatic stress disorder. Given that evidence concerning a defendant’s disadvantaged childhood and mental or emotional disturbances has proven, time and again, to be highly compelling mitigation evidence at sentencing, see Boyde v. California, 494 U.S. 370, 382, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990); Smith v. Mullin, 379 F.3d 919, 943 (10th Cir.2004); Middleton v. Dugger, 849 F.2d 491, 495 (11th Cir.1989), the now-available expert evidence easily could have persuaded at least one juror to choose life imprisonment over death.
Finding that Buckner failed to show prejudice stemming from counsel’s deficient performance, the majority does not even address the jury’s expressed interest in Buckner’s father’s alcoholism and the fire.* The import of the majority’s decision is to raise the standard for showing prejudice beyond a “reasonable probability” to an insurmountable level. Specifically, the majority’s decision completely disregards the fact that one juror has the power to change the result in a death penalty prosecution, and that, in this case, at least one juror expressed his or her intent to weigh Buckner’s father’s alcoholism and the fire as mitigating factors. *284 Given the jury’s concerns regarding these circumstances despite the woefully lacking record, there is certainly a “reasonable probability” that Buckner would have been sentenced to life imprisonment but for counsel’s deficient performance.
Under the facts presented in this record, I would conclude that Buckner has satisfied the “reasonable probability” standard articulated in Strickland. Accordingly, I dissent from the Court’s denial of rehearing en banc.

 The majority resolves Buckner’s Sixth Amendment ineffective assistance of counsel claim by sidestepping the issue of whether counsel's conduct in preparing for the sentencing phase was unreasonable under Strickland. This was a wise move, because counsel's conduct was clearly indefensible in view of the 1989 version of the American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, which were in effect at the time Buckner was tried. See Strickland, 466 U.S. at 688, 104 S.Ct. 2052 (recognizing the guidelines promulgated by the American Bar Association as standards for "determining what is reasonable”). Indeed, other circuits have recognized that a defense attorney must rigorously pursue mental health expert advice upon becoming aware of significant red flags in the defendant's psychological history. See Hamblin v. Mitchell, 354 F.3d 482, 492 (6th Cir. 2003); Jennings v. Woodford, 290 F.3d 1006, 1013-14 (9th Cir.2002); Lambright v. Stewart, 241 F.3d 1201, 1207 (9th Cir.2001); Carter v. Bell, 218 F.3d 581, 596 (6th Cir.2000); Caro v. Calderon, 165 F.3d 1223, 1228 (9th Cir. 1999).